Neil **SOLOMON**, M. D., Ph. D., Secretary, Department of Health and Mental Hygiene

v.

Joseph A. **CALIFANO**, Jr., Secretary, Department of Health, Education and Welfare, Robert A. Derzon, Administrator, Health Care Financing Administration.

Civ. A. No. N–77–2163.

United States District Court, D. Maryland.

Jan. 25, 1979.

Stephen H. Sachs, Atty. Gen. of Maryland, Louise T. Keelty and Stephen J. Sfekas, Asst. Attys. Gen., for plaintiff.

Jeffrey Golland, Dept. of Health, Education and Welfare, Washington, D. C., for defendants.

NORTHROP, Chief Judge.

This is an action by the Secretary of the Department of Health and Mental Hygiene for the state of Maryland (DHMH) against the Secretary of the United States Department of Health, Education, and Welfare (HEW) and the Administrator of the Health Care Financing Administration (HCFA), seeking a declaratory judgment, mandamus, injunction, or other appropriate relief. In this suit, the state of Maryland challenges the Secretary of HEW's decision to disallow approximately $539,385.23 in federal Medicaid funds because of the alleged overpayment of nursing homes by the State during fiscal years 1968 and 1969. The State contends that neither the disallowance nor the procedures utilized by HEW to determine it are authorized by the Medicaid Act, 42 U.S.C. § 1396 et seq. or the administrative regulations that implement the Act. Therefore, the State requests that the Secretary's actions be declared invalid.

In its present posture, the case is before the Court on cross-motions for summary judgment. The defendant also has moved for a protective order barring any further discovery by plaintiff or, in the alternative, delaying discovery until disposition of the summary judgment motion. In September 1978, the Court requested the parties to submit supplemental memoranda on issues raised in their initial summary judgment motions. The Court has received those memoranda and, after full consideration of all pertinent pleadings, is ready to rule on the motions.

## FACTS

Under Title XIX (Medicaid provisions) of the Social Security Act, 42 U.S.C. §§ 1396 et seq., Congress has made available to the states federal funds to aid in financing state medical assistance programs. Before dispensing funds, however, Congress has required that any state that wishes to participate in the Medicaid program must develop and submit a plan to HEW that meets certain requirements set forth by the Secretary of that agency. Once approved, this plan must be put into operation by the state.

Realizing that many states might have difficulty financing a Medicaid program even if subsequently reimbursed by the federal government, the Congress also established a funding mechanism by which HEW forwards funds to the state, on a quarterly basis, equal to its share of the estimated cost of the program. The state then must have its program audited periodically to determine the accuracy of the payment. If payment was inaccurate, the Secretary of HEW may adjust future payments to reflect the prior overpayment or underpayment which he determines was made to the state for any prior quarter. See 42 U.S.C. § 1396b(d)(1), (2); State of Georgia Dept. of Human Resources v. Califano, 446 F.Supp. 404 (N.D.Ga.1977).

In addition to the power to adjust payments made to the state programs, the Secretary is given the responsibility of scrutinizing plans that are in operation to ensure that they continue to comply with the applicable sections of the Medicaid Act and the federal regulations and that the state does not impose any prohibited requirements under the plan. When the Secretary believes that the state is operating its plan in noncompliance with federal regulations, he must give the state agency "reasonable notice and opportunity for a hearing" to evaluate the operation of the plan. See 42 U.S.C. § 1396c; State Dept. of Welfare v. Califano, 556 F.2d 326 (5th Cir. 1977). If the Secretary finds noncompliance with the plan or any of its provisions, he must notify the state agency that further payments will not be made until he is satisfied that there is no longer any failure to comply with the plan. 42 U.S.C. § 1396c.

Furthermore, the Secretary of HEW has the power under 42 U.S.C. § 1316(d) to disallow federal financial participation for certain items or classes of items claimed by the state as proper subjects of federal funding under the Medicaid Act. However, be-

fore the Secretary disallows such items or classes of items from federal financial participation, the state is entitled to and upon request shall receive a reconsideration of the disallowance. 42 U.S.C. § 1316(d); 45 C.F.R. 201.14; see *State of Georgia Dept. of Human Resources v. Califano, supra.*

In this case, the state of Maryland submitted a plan to HEW which was approved in 1966. The State put the plan into operation almost immediately and, as part of its medical assistance program, began releasing funds directly to skilled nursing facilities. The Maryland plan provided that payment for nursing home services would be made at "rates established by the State." *See Plaintiff's Motion for Summary Judgment,* Exhibit 1, filed June 23, 1978.

In 1968 and 1969, the years in question in this suit, the Maryland Legislature fulfilled its responsibility to establish payment rates by setting forth a formula by which to determine reimbursement to nursing homes in its budget bills. That formula required rates to be set on the basis of "verified audited costs," as the term is determined by the Secretary of HEW in the administration of Title XVIII of the Social Security Act amendments of 1965, plus an additional sum, to be determined by the State Board of Public Works, which would include a profit of not less than 10% of total costs. In 1968, the Legislature stated that the "additional sum" should not exceed $12.00 per day per patient. In 1969, the Legislature declared that the entire reimbursement (audited cost plus additional sum) should not exceed $12.00 per day per patient. In an opinion dated March 29, 1976, the Attorney General of Maryland concluded that the State Board of Public Works is under a mandatory duty to calculate the "additional sum" included in the 1968 and 1969 budget bills' formula. *See Plaintiff's Motion for Summary Judgment,* Exhibit C, filed June 23, 1978.

As a complement to its provisions defining reimbursement rates, the Maryland plan directed the Secretary of DHMH to contract with the Hospital Cost Analysis Service, Inc. to obtain audits and studies of nursing home financial records in order to establish proper cost figures. In 1971, the Secretary of DHMH contracted with the Hospital Cost Analysis Service (HCAS) to audit nursing homes to review and verify costs for FY 1968 and FY 1969. This audit did not concern itself with the "additional sum" to be determined by the Board of Public Works. Focusing only on cost, the HCAS audit disclosed that nursing homes had been paid approximately $702,799.45 in excess of verified costs.

In 1975, HEW conducted an audit to determine if the per diem rates paid to nursing homes from July 1, 1969 to December 31, 1973 were computed in accordance with federal regulations and the state plan. As part of this audit, HEW reviewed the HCAS audit of "verified costs" completed in 1971 for the State of Maryland. The HEW Audit Agency concluded that Maryland had overpaid nursing homes by $325,-365.09 in FY 1968 and FY 1969. Subsequently, these figures were readjusted to reflect an overpayment of $545,837.01 attributable to federal matching funds.

On June 4, 1975, the Social and Rehabilitation Service (SRS) Regional Commissioner advised Maryland that the overpayments revealed through the two audits were being disallowed and apprised the State of its administrative appeal rights. On June 30, 1975, the State of Maryland requested an appeal of the Regional Commissioner's decision pursuant to 45 C.F.R. § 201.14. After reviewing all documents relevant to the disallowance, Maryland took the position that the HCAS audits were not final since they did not consider the "additional sum" or profit margin established by the Legislature as the second and third criteria by which costs are to be determined.

To articulate this position, Maryland requested a conference with the Administrator as provided for in 45 C.F.R. 201.14(d)(7). In setting up the conference, the Acting Administrator of SRS informed the State that the purpose of the meeting was to allow the State to informally present those particular aspects of its case which it specifically wished to bring to the Administra-

tor's attention before he proceeded to make the reconsideration. At the conference, the State introduced into evidence the state laws governing Medicaid reimbursement to nursing homes for FY 1968 and FY 1969, the Attorney General's opinion letter interpreting the requirements of State law, and generally explained the difficulty in interpreting the "additional sum" language of the Budget bills of 1968 and 1969.

On October 28, 1977, the Administrator of the Health Care Financing Administration, after reconsideration of the Regional Commissioner's finding, affirmed the disallowance of $534,219.62. This figure reflected a repayment of a small portion of the original disallowance by the State. The Administrator's findings of fact and conclusions of law in this decision are the basic subject matter of the present action.

The Administrator made the following findings of fact in his October 28, 1977 decision:

(1) The audit disclosed that the State Agency used interim per diem rates to reimburse nursing homes even though Hospital Cost Analysis Service field audits showed the rates to be inaccurate and for the most part in excess of the *upper limits*. (emphasis added).

(2) The State Agency has no procedures to determine if Title XIX payments to nursing homes exceeded the *upper limits* established by Title XVIII. However, the audit agency did not make a recommendation based on their review of the *upper limits*. (emphasis added).

(3) The HEW audit disclosed that the State overpaid skilled nursing facilities in the Title XIX program by $325,365 in Federal financial participation.

(4) The Regional Commissioner based his disallowance of $545,837.01 in Federal financial participation on the revised amounts submitted to the State by Hospital Cost Analysis Service when they made their adjustments from interim rates to final rates. This material was submitted to the Regional Office by Mr. John L. Kent, Jr., Assistant Secretary, Medical Care Programs, in his letter of May 16, 1975.

(5) Both the audit and the data submitted by the HCAS included underpayments to facilities which had not received an overpayment during the period of the claims.

(6) In the disallowance letter of June 4, 1975, the Regional Commissioner gave the State seven months in which to recover and repay the overpayments.

In summary, the Administrator concluded as a matter of law that there is no authority in the Social Security Act or regulations promulgated thereunder to provide states with federal financial participation in excess of federally permissible reimbursement rates. Furthermore, the Administrator found that there is no authority in the Social Security Act which permits states excessive delay in making the adjustment from interim to final rates under their Title XIX program. Finally, the Administrator concluded that no statutory or regulatory provision exists which requires the SRS to await recovery of overpayments by the state from nursing homes participating in the Title XIX program when such overpayments have been acknowledged by the state and revealed in the course of an audit. In making his decision, the Administrator relied upon the following applicable statutes and regulations: 42 U.S.C. § 1396b(a)(1), (d)(2); 45 C.F.R. §§ 201.5(a)(3), 250.30(d).

In this suit, plaintiff has attacked the HEW Administrator's decision and administrative actions on several grounds. First, as a matter of procedure, the State complains that HEW violated 45 C.F.R. § 201.14 by having someone other than the official who conducted the conference with the state's representatives make the reconsideration decision. Secondly, the state contends that the HEW Administrator based his decision on a federal regulation not in effect for the periods in question. Thirdly, the state asserts that the Administrator failed to consider the "additional sum" standard established by the Maryland Legislature and that his failure to consider that standard renders his action invalid as arbitrary, capricious, and not in accordance with law.

Fourthly, plaintiff argues that if the Administrator based his decision on a finding that "the State failed to follow its own procedures as directed by the State legislature and its State plan," (*Defendants' Memorandum* at 9, filed May 17, 1978), this Court must vacate the decision because it was made "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). According to plaintiff, the Secretary of HEW "may not determine that a State is not administering its program in conformity with the State plan without first according the State notice and opportunity to be heard pursuant to 42 U.S.C. § 1396c." *Plaintiff's Supplemental Memorandum* at 2, filed November 1, 1978.

In support of the validity of the Administrator's decision, defendants have asserted that the administrative record upon which the Administrator based his decision was full and complete and that his decision was supported by the evidence contained in the certified administrative record and therefore was not arbitrary, capricious, or an abuse of discretion. In their supplemental memorandum, defendants further have contended that the Administrator adequately considered the "additional sum" standard in the 1968 and 1969 budget bills. Defendants theorize that since the additional sum has yet to be determined by the State, "any amount paid during FY 1968 and FY 1969 which exceeded 'verified audited costs,' is an amount in excess of that authorized by the state plan in effect during those years," and thus is subject to recovery by the federal government. *See Defendants' Supplemental Memorandum* at 2, filed October 31, 1978.

A study of the factual circumstances of this case has led the Court to conclude that the basic objectives of the parties are simple but the methods necessary to obtain those aims are unclear and, in practice, have turned out to be both unwieldy and irreparably flawed when measured against legal standards. First, the State of Maryland realizes that its Board of Public Works is under a duty to determine the additional sum standard set forth in the 1968 and 1969 budget bills. The standard, however, is very complicated, requiring the Board to engage in decisions that go far beyond mere computation. *See Opinion of the Attorney General of Maryland,* March 29, 1976, *supra.* For whatever reason, the Board has yet to determine the additional sum figure.

Through audits, HEW has concluded that Maryland paid nursing homes a substantial sum above verified audited cost in FY 1968 and FY 1969. HEW would like to recover what it considers to be an overpayment, but cannot finalize the amount of the overpayment until the State Board of Public Works determines the additional sum figure. Confronted with delay in the determination of the additional sum, HEW undertook to obtain reimbursement through its own administrative procedures. Through the activation of its administrative power, it is apparent that HEW intended to force the State Board of Public Works to compute the additional sum or, if the State Board failed to do so, to secure a full reimbursement of all payments made above verified audited costs until such time as the State determined the additional sum.

This Court finds that HEW, in seeking reimbursement through its administrative procedures, did not clearly articulate the federal regulation upon which it based its decision. In his findings of fact, the Administrator continually referred to "upper limits." The regulation incorporating the "upper limits" standard, 45 C.F.R. § 250.30 (1970), was not applicable to Maryland in FY 1968 and FY 1969. *See Defendants' Supplemental Memorandum* at 1–2, filed October 31, 1978. Instead, the applicable standard for those years is the formula set forth in the State budget bills: verified audited costs plus an additional sum to be determined by the Board of Public Works. *See Plaintiff's Memorandum,* Exhibit 3, filed June 23, 1978. Furthermore, the Court finds that the Administrator failed to consider adequately the "additional sum" standard applicable to the State of Maryland in FY 1968 and FY 1969. The Administrator's findings in support of his decision make no reference to the "additional sum" standard. *See Letter from Robert Derzon*

*to John Kent,* October 28, 1977, in Certified Administrative Record. Because it is highly likely that the Administrator applied the wrong standard in making his decision, this Court concludes that his action is invalid as arbitrary, capricious, and not in accordance with law. 5 U.S.C. § 706(2)(A); *see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

In remanding this case to the Administrator, the Court also observes that, procedurally, this matter more closely approximates a non-conformity than a disallowance issue. *Compare* 45 C.F.R. § 201.6 *with* 45 C.F.R. § 201.14. The underlying problem which has caused the present suit is the State's failure to calculate the "additional sum" standard in accordance with the requirements of its state plan. In arguing that any funds forwarded to the state of Maryland above "verified audited costs" represent overpayments, HEW necessarily has argued that the State's failure to calculate the "additional sum" is a non-conformity with the state plan that removes the "additional sum" standard from the formula to be used in calculating "reasonable costs" for which the state may be reimbursed by the federal government under its Medicaid program. However, in seeking reimbursement for the alleged overpayments at the administrative stage, the HEW Administrator did not consider the State's failure to comply with the plan as a non-conformance under 45 C.F.R. § 201.6 but instead attempted to rectify the alleged overpayments by treating the problem as a disallowance under 45 C.F.R. § 201.14. *See State Dept. of Public Welfare v. Califano, supra*; *United States v. Pennsylvania,* 533 F.2d 107, 109 n.6 (3d Cir. 1976).

Section 201.6 of 45 C.F.R. permits the HEW Administrator to withhold further payments to a state if the state plan no longer complies with federal requirements or, in the administration of the plan, there is a failure to comply substantially with any such provision. The regulation outlines several situations in which the issue of noncompliance may arise:

A question of noncompliance of a State plan may arise from an unapprovable change in the approved State plan, the failure of the State to change its approved plan to conform to a new Federal requirement for approval of State plans, or the failure of the State in practice to comply with a Federal requirement, whether or not its State plan has been amended to conform to such requirement.

If a non-conformity arises and the HEW Administrator decides to withhold further payments to the State or reduce the rate of federal financial participation, the Administrator must give notice to the State and an opportunity for a hearing pursuant to procedures outlined in 45 C.F.R. § 201.13. *See* 45 C.F.R. §§ 201.6(d)–(f).

Sections 201.13–201.14 of 45 C.F.R. permit the Administrator to disallow state claims for federal financial participation in expenditures for particular items or classes of items. When the Administrator determines that a State claim for certain expenditures should be disallowed, he must give the State notice in a disallowance letter and must provide the State with an informal reconsideration conference. *See* 45 C.F.R. § 201.14(b)–(d).

Although the present problem does not fall neatly under either category, the Court finds that the State's failure to have the "additional sum" standard calculated must be treated as a failure to comply with pertinent federal regulations. *See* 42 U.S.C. § 1396c; 45 C.F.R. § 201.6; *State Dept. of Public Welfare v. Califano, supra* at 330–32. The Medicaid provisions of Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* require the State plan to meet certain federal requirements. *See* 45 C.F.R. § 201.3. Implicit in that requirement is the demand that the State, in its administration of the Medicaid program, comply with the provisions of the plan. Thus, a failure to administer the program in compliance with the plan is a non-conformity with the provisions of applicable federal law under 45 C.F.R. § 201.6.

Therefore, the Court remands this action to the HEW Administrator on two

grounds. First, the Court sends the matter back to the Administrator because of his failure to consider the correct standard for determining "reasonable costs" applicable to the state of Maryland in fiscal years 1968 and 1969. Consideration of this standard must of necessity include review of the "additional sum" language of the State budget bills for fiscal years 1968 and 1969. Furthermore, the Administrator must clearly articulate the federal regulation(s) upon which he bases his decision on remand. Secondly, the Court returns the case to the Administrator because of his failure to consider the State's inability to calculate the "additional sum" standard as a non-conformity under 45 C.F.R. § 201.6. On remand, then, the HEW Administrator must meet the notice requirements of 45 C.F.R. § 201.6 and provide the State with an opportunity for a hearing as outlined in 45 C.F.R. §§ 201.6(d) and 201.13.

Because of its ruling, the Court does not reach the issue of whether HEW violated 45 C.F.R. § 201.14 by having someone other than the official who conducted the reconsideration conference with the State's officials make the reconsideration decision.

Therefore, in accordance with this opinion, the Court will enter a separate Order remanding the case to the Administrator for further proceedings in light of this Court's rulings on the issues of whether the Administrator properly based his decision on the applicable standard for FY 1968 and FY 1969 and whether he correctly treated the State of Maryland's failure to calculate the "additional sum" as a disallowance, rather than a non-conformity, question.