Ralph M. GRASSO and Cleante
A. Pimpinella

v.

UNITED STATES POSTAL SERVICE
and United States of America.

Civ. No. H–33.

United States District Court,
D. Connecticut.

Oct. 17, 1977.

James A. Wade, Robinson, Robinson & Cole, Hartford, Conn., for plaintiffs.

Thomas P. Smith, Asst. U. S. Atty., New Haven, Conn., for defendants.

### RULING ON MOTION TO DISMISS

BLUMENFELD, District Judge.

On the basis of a four-count complaint, plaintiffs Ralph M. Grasso and Cleante A. Pimpinella seek $3.3 million in damages from the defendants, the United States and the United States Postal Service ("U.S.P.S."). The defendants have moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the action because of a lack of subject matter jurisdiction in this court.

#### I.

The determination of whether this court has jurisdiction over all or any part of the subject matter of this action turns largely upon the nature of plaintiffs' claims. As such, the analysis must begin with a brief statement of the operative facts alleged in plaintiffs' complaint.

On July 20, 1970, plaintiffs entered into an agreement with a third person, not a party to this action, to purchase eleven acres of land located in Stamford, Connecticut. However, title was not to pass until September 23, 1971, and the agreement granted plaintiffs the right to cancel the deal at any time prior to January 15, 1971.

On August 19, 1970, plaintiffs offered to sell the Stamford property to the United States; the offer was addressed to the postmaster of the Stamford Post Office and called for a purchase price of $3.3 million. Plaintiffs allege that over the next six months, the postmaster expressed some interest in purchasing the property. Based upon this expression of interest as well as favorable reactions from other prospective developers and purchasers, plaintiffs decided not to exercise the right to cancel the deal on January 15, 1971.

On September 23, 1971, title passed to the plaintiffs. In a letter dated May 11, 1971, plaintiff Grasso asked the Stamford postmaster whether the Postal Service was still interested in the property. The postmaster relayed the offer to his superiors, and on August 27, 1971, the United States Army Corps of Engineers informed plaintiffs that the Corps had received authorization to negotiate for the purchase of the property which was contemplated for use as a postal facility.

During October and November, 1971, plaintiffs and representatives of the Army

Corps of Engineers entered into negotiations concerning the Government's purchase of the property. However, they could not agree upon a mutually acceptable purchase price. Thus, on December 7, 1971, in letters addressed both to the Corps of Engineers and the Acting Postmaster General of the United States, plaintiffs requested that the Corps of Engineers immediately commence condemnation proceedings.

On January 12, 1972, an Army Corps of Engineers representative informed Grasso and Pimpinella that condemnation proceedings were to be commenced in the District of Connecticut. The letter also provided plaintiffs with the requisite 90-day statutory notice for surrender of possession of the property; plaintiffs were advised to surrender possession by April 15, 1972. However, on February 22, 1972, the Army Corps of Engineers informed plaintiffs that the commencement of the condemnation proceedings had been delayed and that the April 15 surrender date was no longer applicable.

In a letter dated March 30, 1972, the Senior Assistant Postmaster General advised plaintiffs that the Postal Service had determined that the property was no longer needed by the government, and that condemnation proceedings were no longer contemplated. On May 22, 1972, the Army Corps of Engineers formally notified plaintiffs that its letters of January 12, 1972 and February 22, 1972 concerning the condemnation of the property and the surrender dates were rescinded.

In April 1973, plaintiffs commenced the present action. The complaint asserts four counts against each of the defendants. Count 1 alleges that by their actions the United States and the U.S.P.S. from September 1, 1971 to June 26, 1972, "restricted the normal use, benefit and enjoyment of the plaintiffs' property . . . [which] generally resulted in a sharp devaluation of the plaintiffs' property . . . ." Complaint, First Count, ¶ 23. It is asserted that these actions "effectively resulted in a taking of plaintiffs' property without just compensation and without due process of law . . . ." *Id.*, First Count, ¶ 24.

The second count of the complaint, based upon a promissory estoppel theory, alleges that the defendants caused plaintiffs to rely on their promises and thus "to forbear from making plans to develop the property, from pursuing negotiations with other interested developers and tenants and from interesting other prospective developers and tenants" in the property. *Id.*, Second Count, ¶ 23.

Count 3 alleges that "[t]he defendant[s'] actions in notifying the plaintiffs to surrender possession and thereafter taking no further action until official and formal notification of abandonment of condemnation proceedings was sent by letter dated May 22, 1972, constituted an unreasonable delay in the prosecution of condemnation proceedings to the substantial financial detriment of the plaintiffs." *Id.*, Third Count, ¶ 23.

The fourth count of the complaint asserts that the defendants' actions constituted "wanton and willful . . . disregard for the rights of private citizens in the carrying out of a public project . . . ." *Id.*, Fourth Count, ¶ 23.

Defendants assert that principles of sovereign immunity deprive this court of jurisdiction over any of these four claims against the United States and the U.S.P.S. Plaintiffs counter that the action is properly before this court. I turn now to a resolution of this jurisdictional dispute.

II.

■ It has long been settled that the United States, as sovereign, cannot be sued without its consent, and that such a waiver of immunity can only be made by the Congress. *See generally*, Wright, Miller & Cooper, *Federal Practice & Procedure*, Civil § 3654 (1976). Therefore, the nature and terms of any Congressional consent to be sued define the court's jurisdiction over claims against the United States. *See, e. g.*, *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

■ An analysis of these jurisdictional grants reveals that the extent of a federal district court's jurisdiction over claims

against the United States and the U.S.P.S. varies depending upon whether the claim is one which sounds in tort or alternatively whether it is premised upon a contractual theory or a constitutional provision. 28 U.S.C. § 1346; 39 U.S.C. § 409(a) and (c). Count 1 (Taking) and Count 2 (Promissory Estoppel) of plaintiffs' complaint are grounded upon theories of recovery which are manifestly non-tort in nature. As such, the extent of this court's jurisdiction over these claims must be analyzed separately from that over Count 3 (Unreasonable Delay) and Count 4 (Negligence) which assert claims sounding in tort. The matter is further complicated because the extent of this court's jurisdiction over the United States is not precisely identical to that over the Postal Service. Thus, the court's jurisdiction over each claim against each defendant, and the relationship between the defendants must also be considered.

A. *Count 1 (Taking) and Count 2 (Promissory Estoppel)—The Non-Tort Claims*

■ Title 39 U.S.C. § 409(a) establishes that "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." While 39 U.S.C. § 409(c) makes the Federal Tort Claims Act applicable to tort claims against the Postal Service, *see infra* Part IIB, there is no similar restriction on the district court's jurisdiction over non-tort claims naming the Postal Service as a defendant. Thus, it is clear that this court has jurisdiction over the non-tort claims against the Postal Service asserted in Counts 1 and 2 of plaintiffs' complaint.

■ However, with respect to non-tort claims against the United States, the district court's jurisdiction is far more limited. The Tucker Act, 28 U.S.C. § 1346(a)(2), gives the district court original jurisdiction, concurrent with the Court of Claims, 28 U.S.C. § 1491, over

"Any . . . civil action or claim against the United States, *not exceeding $10,000 in amount,* founded either upon the Constitution . . . or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort."* (Emphasis added.)

Since both Count 1, which asserts a taking of property without just compensation in violation of the fifth amendment, *see, e. g., Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *United States v. 21.54 Acres of Land,* 491 F.2d 301 (4th Cir. 1973), and Count 2, which relies upon a contract-like theory of promissory estoppel, *see, e. g., Putnam Mills Corporation v. United States,* 432 F.2d 553, 554 (2d Cir. 1972) (per curiam) allege claims which do not sound in tort, the Tucker Act governs the extent of this court's jurisdiction. And, because plaintiffs seek damages well in excess of $10,000, this court is without jurisdiction over these claims against the United States, for the Tucker Act provides that such claims are within the exclusive jurisdiction of the Court of Claims. *See, e. g., Wolak v. United States,* 366 F.Supp. 1106, 1110 (D.Conn. 1973); *Turtzo v. United States,* 347 F.Supp. 336 (E.D.Pa.1972); *see generally,* Wright, Miller & Cooper, *Federal Practice & Procedure,* Civil § 3657 at 218 (1976).

Since this court has jurisdiction over the non-tort claims against the Postal Service, but not over the same claims against the United States, the issue is reduced to whether the action against the Postal Service may continue here in the absence of the United States.[1] Put another way, the question is whether the United States is an indispensable party to this action as defined by Rule 19 of the Federal Rules of Civil Procedure.

Rule 19(a) identifies those absent parties that should be joined, if feasible, as parties

---

1. Of course, I have also considered the possibility of applying the doctrines of pendent and ancillary jurisdiction as a means of maintaining jurisdiction over the United States on the non-tort claims. However, because Congress has given *exclusive* jurisdiction over these claims against the United States to the Court of

Claims and because that court will exercise jurisdiction over the Postal Service, *see infra* at 1235–1236, I have concluded that the application of these doctrines would unnecessarily and improperly extend the United States' consent to suit. *Cf.* 3A *Moore's Federal Practice* ¶ 18.07[3] at 1983–84 (1974).

to an action in order to insure a just adjudication. Thus, an absentee should be joined if it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may . . . as a practical matter impair or impede [its] ability to protect that interest . . . ."

In the present action, an analysis of plaintiffs' complaint reveals that each of the core allegations relates to actions or inactions by the Army Corps of Engineers or United States Postal Service, *acting on behalf of the United States.* It was the Army Corps of Engineers, acting on behalf of the United States, which negotiated for the purchase of the property, and, when negotiations failed, informed plaintiffs about the imminency of condemnation proceedings, and the later decision to abort those proceedings. Similarly, while the Postal Service has been granted the authority to exercise the right of eminent domain, it does so only "in the name of the United States." 39 U.S.C. § 401(9). Thus, while the Postal Service may take the initial steps toward condemnation, it is the United States which is ultimately condemning the property. *United States v. Pressnell*, 328 F.2d 580, 582 (6th Cir. 1964); *see also, Goddard v. District of Columbia Redevelopment Land Agency*, 109 U.S.App.D.C. 304, 306, 287 F.2d 343, 345 (1961). For these reasons the United States is largely the real party defendant in this action.[2] 3A *Moore's Federal Practice* ¶ 17.07 at 226–27 (1974). Accordingly, it has a significant, if not a paramount, interest in defending against plaintiffs' claims here; an interest which would surely be prejudiced if the action proceeded in its absence.[3] Clearly then, the United States comes within Rule 19(a)'s definition of an entity which should be joined, if feasible, to insure a just adjudication.

While Rule 19(a) identifies those parties which should be joined if feasible, Rule 19(b) articulates a set of factors for determining whether an entity which meets the tests for joinder under Rule 19(a), but cannot be joined, is an indispensable party without whom the action cannot proceed. One such factor—the "extent [to which] a judgment rendered in [its] absence might be prejudicial to [it] . . . ."—has already been discussed. A second factor is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." This factor "indicates that the court should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." Advisory Committee Notes to Rule 19, 28 U.S.C.A. at 107.

As noted earlier, the Court of Claims has exclusive jurisdiction over non-tort claims against the United States which exceed $10,000. Therefore, the plaintiffs may sue the United States in that forum. A somewhat more difficult question is whether the Postal Service may be joined in such an action. While 39 U.S.C. § 409 gives the district courts original, but not exclusive, jurisdiction over all non-tort claims against the Postal Service, it does not precisely identify which courts have concurrent jurisdiction. The Court of Claims, however, has considered the problem and concluded that it has concurrent jurisdiction over claims against the Postal Service pursuant to the Tucker Act, 28 U.S.C. § 1491. *Butz Engineering Corp. v. United States*, 499 F.2d 619, 625, 204 Ct.Cl. 561 (1974).[4] As such,

---

**2.** This does not mean that the Postal Service may not itself be liable. Plaintiffs' theory of promissory estoppel rests at least in part on statements made by officials of the U.S.P.S. Complaint, ¶ 7.

**3.** The court does not mean to suggest that the United States need be joined in every action against the Postal Service. *Cf. White v. Bloomberg*, 501 F.2d 1379, 1384 n. 6 (4th Cir. 1974). The point is only that based on the facts and circumstances of this case the United States has a sufficiently important interest to make it an indispensable party.

**4.** Even if the Court of Claims does not have original jurisdiction over the Postal Service, the case seemingly presents an appropriate circumstance for that court to exercise ancillary or pendent jurisdiction over the claims against the Postal Service. The Court of Claims has *exclusive* jurisdiction over the claims against the United States and, therefore, is the *only* forum where all of the claims may be tried together.

that court provides a wholly adequate forum for the complete adjudication in a single action of the plaintiffs' non-tort claims against both the United States and the U.S.P.S. For this and the other reasons discussed, I conclude that the United States is an indispensable party to this action, and, therefore, that the action should not proceed in this court in its absence.

Anticipating the court's conclusion that the non-tort claims cannot be litigated here, both plaintiffs and defendants have suggested a transfer of Counts 1 and 2 to the Court of Claims. Title 28 U.S.C. § 1406(c) expressly provides for such a transfer "if it be in the interest of justice." Because the Court of Claims is the exclusive forum for adjudicating the non-tort claims asserted against the United States and because that court will also exercise jurisdiction over the Postal Service, I find the transfer of Counts 1 and 2 against both defendants to be completely appropriate. *Cf. Eccles v. United States*, 396 F.Supp. 792 (D.N.D.1975).

Defendants' motion to dismiss Count 1 and Count 2 of plaintiffs' complaint is granted, but these counts shall be transferred to the Court of Claims pursuant to 28 U.S.C. § 1406(c).

B. *Count 3 (Unreasonable Delay) and Count 4 (Negligence)—The Tort Claims*

■ At the outset, it must be noted that the U.S.P.S. may not be sued directly on tort claims arising out of its activities; the claims must be asserted against the United States. Title 39 U.S.C. § 409(c) makes the Federal Tort Claims Act, 28 U.S.C. § 1346(b); § 2671 *et seq.*, fully applicable to tort claims arising out of the activities of the Postal Service. And, the Tort Claims Act expressly provides that suits based on torts allegedly committed by a federal agency must name the United States, not the agency, as the defendant.

*Cf. Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). *Cf.* note 1 *supra.*

**5.** It is because of this court's exclusive jurisdiction over tort claims against the United States that the whole action could not be transferred to the Court of Claims. While I have doubts

The Second Circuit has recently made this point:

"Neither the Postal Service nor the Postal Inspection Service, named as defendants, may be sued directly on claims brought under 28 U.S.C. § 1346(b). Rather, it is expressly provided that

[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title . . ..

28 U.S.C. § 2679(a). The Postal Service and Postal Inspection Service seem plainly to be 'federal agencies' within the broad definition of that term provided in 28 U.S.C. § 2671 (including 'corporations primarily acting as instrumentalities or agencies of the United States'). *Cf. Edelman v. Federal Housing Administration*, 382 F.2d 594, 596 (2d Cir. 1967)."

*Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252, 1256 (2d Cir. 1975). *Cf. Goddard v. District of Columbia Redevelopment Land Agency, supra*, 109 U.S. App.D.C. at 306–07, 287 F.2d at 345–46. Thus, if jurisdiction exists in this court pursuant to the Tort Claims Act, it extends only to tort claims naming the United States as the defendant. However, as shall presently be demonstrated, this court has no jurisdiction even over these claims.

■ A corollary to the doctrine of sovereign immunity is the rule that the United States may define the conditions under which actions are permitted against it. *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Battaglia v. United States*, 303 F.2d 683, 685 (2d Cir. 1962). Thus, while the federal district courts have been given exclusive jurisdiction over tort claims[5] against the United States, 28 U.S.C. § 1346(b), that jurisdiction

about its success, the plaintiffs are, of course, free to argue to the Court of Claims that Counts 3 and 4 are Tucker Act claims which are within that court's jurisdiction. *See, e. g., Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963).

exists only when the statutory procedures for asserting such a claim have been followed.

Title 28 U.S.C. § 2675(a) requires the exhaustion of administrative remedies before a tort suit against the United States may be commenced in the district courts.[6] This provision has been implemented by regulations of the United States Postal Service. Title 39 C.F.R. § 912.5 provides:

> "For the purposes of this part, a claim shall be deemed to have been presented when the U.S. Postal service receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95, Claim for Damage or Injury, or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury or death alleged to have occurred by reason of the incident. Standard Form 95 may be obtained from postmaster, postal inspectors, or other local Postal Service establishments."

Plaintiffs have not submitted a "claim" for money damages in sum certain as required by this regulation.[7] As such, the exhaustion requirement of 28 U.S.C. § 2675(a) has not been satisfied. It is not enough that plaintiffs expressed their dissatisfaction during conferences with the United States Attorney and representatives of the Army Corps of Engineers. *Turtzo v. United States, supra*, 347 F.Supp. at 338. Nor is it enough that plaintiffs informed a Senior Assistant Postmaster General that "it will seek reimbursement from the United States Postal Service through whatever means available for the extensive damage suffered." Plaintiffs' Memo in Opposition to Defendants' First Motion to Dismiss at 14. Both the statute and the implementing regulations require a more definite claim before exhaustion can be said to have occurred. *Melo v. United States*, 505 F.2d 1026, 1028–29 (8th Cir. 1974); *Bialowas v. United States*, 443 F.2d 1047, 1048–49 (3d Cir. 1971).

■ The exhaustion requirements are not unduly burdensome, and plaintiffs have offered no explanation for their non-compliance. As such, the failure to exhaust administrative remedies defeats this court's jurisdiction.[8] Accordingly, defendants' mo-

---

**6.** Title 28 U.S.C. § 2675(a) provides in relevant part:

> "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

**7.** Nor have the plaintiffs submitted a claim to the Army Corps of Engineers pursuant to 28 C.F.R. § 14.2(a).

**8.** While the failure to comply with 28 U.S.C. § 2675(a) is enough to defeat the jurisdiction of this court over Counts 3 and 4 and require dismissal, there may well be another basis for doing so. While 28 U.S.C. § 1346(b) waives sovereign immunity with respect to negligence claims against the United States, 28 U.S.C. § 2680 limits that waiver to certain types of tort claims. In particular, the waiver does not extend to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government . . . ." 28 U.S.C. § 2680(a).

While the determination of what constitutes a discretionary act is most difficult, the courts that have considered tort claims arising out of the mishandling of condemnation proceedings have concluded that such claims are indeed based upon allegedly tortious performance of a discretionary function and hence within the § 2680(a) exception to federal court jurisdiction. Indeed, in *Goddard v. District of Columbia Redevelopment Land Agency*, 109 U.S.App. D.C. 304, 287 F.2d 343 (1961), the court was confronted with tort claims very similar to those presented here and concluded that claims of this kind have not been consented to by the Congress. *See also, Sayre v. United States*, 282 F.Supp. 175 (N.D.Ohio 1967). Thus, even if the claims had properly been presented to the administrative bodies, it would seem that there would still be no jurisdiction in this court.

tion to dismiss Count 3 and Count 4 of plaintiffs' complaint is granted.

### III. *Conclusion*

Plaintiffs' complaint is in four counts. The idiosyncracies of the doctrine of sovereign immunity have required the consideration of the nature of each count and of the party sued in order to determine whether jurisdiction exists in this court over the subject matter of any of these claims. On the basis of this inquiry, defendants' motion to dismiss Counts 3 and 4 is granted because of the plaintiffs' failure to exhaust administrative remedies as required by 28 U.S.C. § 2675(a). Similarly, the motion to dismiss Counts 1 and 2 is granted because this court has no jurisdiction over the claims against the United States which is an indispensable party. However, the claims asserted in Counts 1 and 2 against both the United States and the U.S.P.S. shall be transferred to the Court of Claims pursuant to 28 U.S.C. § 1406(c).

It is SO ORDERED.