**Jules and Eileen PEARLSTINE**

**v.**

**UNITED STATES of America and United States Postal Service.**

**Civ. A. No. 78–4014.**

United States District Court,
E. D. Pennsylvania.

May 10, 1979.

Pearlstine, Salkin, Hardiman & Robinson, Edward J. Hardiman, Lansdale, Pa., for plaintiffs.

Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

POLLAK, District Judge.

On June 15, 1970, plaintiffs Jules and Eileen Pearlstine entered into an agreement with the United States, pursuant to which the latter leased, for a period of fifteen years, a one-story masonry building and adjacent driveway, parking area, and unimproved ground, in the Borough of Clementon, New Jersey, for use as a post office. Paragraph 9 of the lease agreement provided that:

> The Government shall have the right to make alterations, attach fixtures and erect additions, structures or signs in or upon the premises hereby leased (provided such alterations, additions, structures or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the building in which said premises are located); which fixtures, additions or structures so placed in, upon or attached to the said premises shall be and remain the property of the Government and may be removed or otherwise disposed of by the Government. Prior to expiration or termination of this lease the Government shall, if required by the Lessor by notice in writing sixty days in advance of such expiration or termination, restore the premises to as good condition as that existing at the time of entering upon the same under this lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted.

On July 11, 1978, A. J. Acierno of the United States Postal Service wrote plaintiffs to report that a study had determined

the need for a larger postal facility in the Borough of Clementon and, therefore, that "an addition of approximately 3,250 feet will be added to the present building at Postal Service expense [and] the additional unimproved ground owned by you directly adjacent to the Postal Service parking lot will be improved at Postal Service expense since the ground is part of the present lease." According to the plaintiffs, the Postal Service plans to macadamize the unimproved ground to provide additional parking spaces.

On December 1, 1978, plaintiffs commenced this action, seeking an injunction to restrain the United States and the Postal Service from making the proposed alterations. An amended complaint was filed on February 22, 1979, specifying that jurisdiction was predicated on 28 U.S.C. § 1339 and 39 U.S.C. § 409(a).[1] Defendants have moved for summary judgment.

## I.

Defendants' first argument is jurisdictional—namely, that principles of sovereign immunity preclude this Court from entertaining plaintiffs' claim.

■ The Postal Service cannot hope to prevail on a claim that it is protected from suit by the immunity of the United States. For Congress, in enacting the Postal Reorganization Act in 1971, expressly stipulated that the Postal Service should have authority to "sue and be sued in its official name," 39 U.S.C. § 501; and this provision has been understood to operate as a waiver of sovereign immunity in all actions brought against the Postal Service. See *Standard Oil Division, American Oil Co. v. Starks*, 528 F.2d 201 (7th Cir. 1975); *Grasso v. United States Postal Service*, 438 F.Supp. 1231 (D.Conn.1977).

■ Here, however, the matter is slightly complicated by the fact that the 1970 lease was executed by the United States, not by the Postal Service. The Postal Service did not exist as an entity with the power to contract until July, 1971. Under the Tucker Act, 28 U.S.C. § 1346(a)(2), the United States can be sued in a district court in contract for money damages, but not for equitable relief. See *Lee v. Thornton*, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975). Hence, if the United States were, with respect to plaintiffs' request for an injunction, an indispensable party, this Court would be powerless to proceed. Cf. *Grasso, supra*, at 1234–36. However, the Postal Reorganization Act, as part of its plan to encourage operation of the Postal Service in a "business-like way," (1970 *U.S.Cong. & Admin.News*, pp. 3649, 3660) provided for the transfer of assets from the United States to the Postal Service. 39 U.S.C. § 2002(c). Included in that transfer were (1) "all real property 55 percent or more of which is occupied by or under the control of the former Post Office Department," and (2) "all contracts . . . of the former Post Office Department." Therefore, the lease which is the focus of this litigation is now the property of the Postal Service. It follows that the United States is not an indispensable party—indeed, that it has no real interest in this dispute.

## II.

■ Second, defendants assert that the planned alterations would not do irreparable harm to the leasehold property and, therefore, that this Court, as a matter of law, cannot issue the injunction sought by the plaintiffs. But if plaintiffs can demon-

---

1. 28 U.S.C. § 1339 provides:
   The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service.
39 U.S.C. § 409(a) provides:
   Except as provided in section 3628 of this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. Any action brought in a

State court to which the Postal Service is a party may be removed to the appropriate United States district court under the provisions of chapter 89 of title 28.
Section 3628 governs appellate review of decisions by the Postal Service Board of Governors to "approve, allow under protest, or modify recommended decisions of the Postal Rate Commission."

strate that the planned alterations are not of the character contemplated by the lease agreement, equitable relief might be appropriate. Courts "have traditionally been willing to grant injunctions against the commission of waste." *Restatement of the Law 2d, Landlord & Tenant § 12.2*, Reporter's Note 11 at 462. Accord, *United States v. State of Washington*, 520 F.2d 676, 685 (9th Cir. 1975). Whether this case does or does not fall within that rubric cannot be determined on the basis of the amended complaint, and the lease, standing alone.

### III.

Finally, defendants argue that the planned alterations are clearly permissible under the lease. But Paragraph 9 of the lease is not free from ambiguity: it seems to afford the Government the right to alter the leasehold premises; but, at the same time, it stipulates that additions "shall . . remain the property of the Government." Read together, these two clauses provide some support for plaintiffs' position that the lease contemplates only additions that are readily removable. But the present record is certainly not conclusive one way or the other. A confident and responsible interpretation of Paragraph 9 will require some exploration of the circumstances surrounding, and giving content to, the lease.[2]

### Conclusion

This Court has jurisdiction. Further proceedings will be required to determine whether defendants' proposed addition to plaintiffs' premises would go beyond defendants' leasehold entitlement, and, if so, whether plaintiffs are entitled to equitable relief. Accordingly, the motion for summary judgment must be denied.

---

2. *Rosenblum v. Neisner*, 231 F.2d 322 (7th Cir. 1956), cited by the defendants, is not to the contrary. There, the lease provided that:

"Lessee shall have the right to make such alterations and changes in any part of the premises occupied by it as it finds necessary for its purposes, at its own expense, providing such alterations will not injure the building, and must be done in a first-class work-manlike manner. Lessee agrees to restore the premises to the same condition as when received, if Lessors so desire and give at least Three (3) months notice to [that] effect *before the expiration of the term of this lease*." The Court of Appeals for the Seventh Circuit found "such ambiguity in the provision" that it was necessary to interpret the lease "under all the facts and circumstances of this case."