John B. WINGATE, as Commissioner of Social Services of the County of Orange, County of Orange, The State of New York, and Barbara Blum, as Commissioner of Social Services of the State of New York, Plaintiffs,

v.

Patricia R. HARRIS, as Secretary of the Department of Health, Education and Welfare of the United States of America, Defendants.

No. 78 Civ. 2284 (RLC).

United States District Court, S. D. New York.

Sept. 9, 1980.

James G. Sweeney, County Atty. of Orange County, Goshen, N.Y., for plaintiffs John B. Wingate and County of Orange; Michael B. Heckman, Asst. County Atty., of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for plaintiffs State of New York and Barbara Blum; Frederick K. Mehlman, Asst. Atty. Gen., New York City, of counsel.

John S. Martin, Jr., U. S. Atty. for the Southern Dist. of New York, New York City, for defendant Harris; Gaines Gwathmey, III, Asst. U. S. Atty., Linda Lee Walker, Asst. Regional Atty., H.E.W., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The State of New York, the County of Orange, New York, and their respective Commissioners of Social Services ("New York" and "Orange") brought this action against the Secretary of the Department of Health, Education and Welfare ("HEW") seeking an order that the Secretary reimburse plaintiffs for certain costs incurred under the Medicaid program. No material facts are in dispute, and plaintiffs and defendant have each moved for summary judgment. Rule 56, F.R.Civ.P. For the reasons stated below, defendant's motion is granted, and the complaint is dismissed.

*Background*

The Medicaid program, established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (the "Act"), is a jointly financed undertaking by the federal and state governments to provide expanded medical care to needy, handicapped and disabled persons. Under the Act, the federal government reimburses state governments for a percentage of the cost of medical assistance to eligible individuals if the state has submitted and the Secretary has approved a plan for medical assistance, and the expenses for which reimbursement is sought are incurred in accordance with the plan. *Ibid.* In the instant case, the federal government reimburses New York for one half of its cost of administering the program, and New York in turn provides a percentage of Orange's costs, so that, in effect, the United States is paying for half of the benefits rendered under the program, while New York and the local jurisdiction, Orange, are dividing the remaining fifty percent.

Individual recipients of medical services provided under the Act receive no bill therefor; rather, the provider of services is directly reimbursed by the appropriate governmental agency. 42 U.S.C. § 1395f. Therefore, one of the requirements imposed on state plans is that they provide for specific agreements with all individuals and institutions rendering services to Medicaid recipients. 42 U.S.C. § 1396a(a)(27); 42 C.F.R. § 442.10. In addition, state plans must require, with respect to skilled nursing care facilities—the type of providers involved in this suit—that each facility satisfy

all the eligibility requirements for skilled nursing homes under the Medicare program (Title XVIII of the Act, 42 U.S.C. § 1395 *et seq.*). 42 U.S.C. § 1396a(a)(28); 42 C.F.R. § 442.202.

This case involves the proper apportionment of costs incurred by three nursing home providers: Doane's Nursing Home, Earle Nursing Home, and Jones and Martin Nursing Home. Prior to 1975, 1976 and 1977, respectively, each was a certified provider of skilled nursing facility services under the Medicaid program, and each had the requisite provider agreement with New York. Subsequently, however, HEW found each not to meet the requirements of skilled nursing facilities under the Act, and they were decertified.[1] No federal payments for expenses incurred at these facilities were made thereafter. However, the resident recipients of Medicaid benefits at each nursing home instituted state court actions, to which the federal government was not a party, to prevent New York and Orange from transferring them to other locations or from terminating payments to their facilities pending hearings allegedly required under state law. *See* 18 N.Y.C.R.R. § 358.-4(a)(4). In each case, these proceedings allowed Medicaid recipients to remain in the nursing homes, pursuant to state court orders, past the dates of termination of federal payments.[2] As a result, at least in the cases of Doane's and Earle, New York and Orange made payments to the provider facilities for which the Secretary refused to make the normal reimbursements, on the ground that the facilities lacked valid provider agreements as required by regulations promulgated under the Act. 42 C.F.R. § 449.10(b)(4)(i)(c). In excess of $70,000 in claims by New York went unpaid by HEW.[3]

As to each claim, New York requested an administrative reconsideration of the disallowance, pursuant to 42 U.S.C. § 1316(d); these reconsiderations are still pending.

Thereafter, plaintiffs brought this action contending that defendant is required under the Act and relevant regulations to continue federal financial participation in a state's Medicaid program even after decertification of the providers in question, pending completion of the administrative appeal process and final judicial review thereof. Plaintiffs therefore seek an order that federal payments be continued until final resolution of their dispute with HEW. The Secretary argues that the court lacks jurisdiction to grant such an order, and that, in any event, plaintiffs have not exhausted the available administrative remedies, and seeks dismissal.

*Determination*

■ Plaintiffs allege jurisdictional bases for this action in 28 U.S.C. §§ 1331 and 1361 and the Administrative Procedure Act, 5 U.S.C. §§ 701–04. The latter basis must be rejected, because the Supreme Court has ruled conclusively that the Administrative Procedure Act does not extend the jurisdiction of the federal courts, but merely defines the scope of judicial review where jurisdiction exists. *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977); *see Bussey v. Harris*, 611 F.2d 1001, 1005 n.7 (5th Cir. 1980); *Tongol v. Usery*, 601 F.2d 1091, 1098 n.7 (9th Cir. 1979); *White v. Mathews*, 559 F.2d 852, 856 n.4 (2d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).

■ Superficially, the other alleged jurisdictional bases appear proper. Section 1331 authorizes suits in the district courts that arise under federal law and are brought

---

1. HEW notified New York and Doane's of the latter's noncompliance with the Act on April 23, 1975, and New York revoked Doane's provider agreement effective June 9, 1975. The same two steps were taken with respect to Earle on May 24 and June 9, 1976, respectively; as to Jones and Martin, on May 5 and June 1, 1977, respectively.

2. All resident–recipients were finally removed from Doane's on January 17, 1979; from Earle

on December 31, 1977; and from Jones and Martin on July 11, 1978.

3. New York filed quarterly claims for reimbursements covering the fifteen months from January, 1977, through March, 1978. The claims, all of which were disallowed, totalled $14,805 for Doane's and $56,866 for Earle. Floyd Jones Affidavit, ¶¶ 9–30.

against a federal agency or officer, both of which criteria are met here; and section 1361 provides the district courts with jurisdiction over mandamus actions to compel federal officials to perform duties owed to plaintiff, which is one way to express the relief sought here. These provisions notwithstanding, however, in the Tucker Act Congress created exclusive jurisdiction in the Court of Claims over actions "against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contact with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491; *see* 28 U.S.C. § 1346(a)(2). "It has long been settled that the United States, as sovereign, cannot be sued without its consent, and that such a waiver of immunity can only be made by the Congress.... Therefore, the nature and terms of any Congressional consent to be sued define the court's jurisdiction over claims against the United States." *Grasso v. United States Postal Service*, 438 F.Supp. 1231, 1233 (D.Conn.1977) (citations omitted). Thus, if this case falls within the exclusive jurisdiction granted to the Court of Claims, the court is without authority to hear it. *E. g., Estate of Watson v. Blumenthal*, 586 F.2d 925, 929 (2d Cir. 1978); *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977); *South Windsor Convalescent Home, Inc. v. Math-*

ews, 541 F.2d 910, 914 (2d Cir. 1976); *Putnam Mills Corp. v. United States*, 432 F.2d 553, 554 (2d Cir. 1970); *Ove Gustavsson Contracting Co. v. Floete*, 278 F.2d 912, 914 (2d Cir.), *cert. denied*, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960); *Grasso v. United States Postal Service, supra*, 438 F.Supp. at 1233–34; *see generally* 17 Wright & Miller, *Federal Practice and Procedure* § 4101 at 210–13 (1978).

The determination of whether a case falls within the exclusive jurisdiction of the Court of Claims or the more general jurisdiction of the district court depends upon a proper construction of plaintiffs' claims. *See Estate of Watson v. Blumenthal, supra*, 586 F.2d at 928–29; *American Science & Engineering, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978); *Warner v. Cox*, 487 F.2d 1301, 1303–04 (5th Cir. 1974). If, as plaintiffs argue here, this case is truly one for injunctive and declaratory relief to compel the Secretary to perform her duty under the law as plaintiffs construe it, then jurisdiction is proper in this court under 28 U.S.C. §§ 1331 and 1361. On the other hand, if the principal relief sought is an award of damages in excess of $10,000, then under the Tucker Act, jurisdiction exists only in the Court of Claims. 28 U.S.C. §§ 1346(a)(2), 1491.

The relief sought by plaintiffs [4] reveals that this action is principally one for dam-

4. Plaintiffs' amended complaint seeks the following relief:

(a) Assume and retain jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331, 1361 and 2201 *et seq.*; and 5 U.S.C. §§ 701 to 704.

(b) Declare that defendant's conduct in terminating federal financial participation, when plaintiffs are required to continue recipients in the Medicaid program pursuant to court order, is illegal and void and contrary to 45 C.F.R. § 205.10(b)(3) and 42 U.S.C. § 1396 *et seq.*;

(c) Declare that defendant's conduct in terminating federal financial participation prior to a hearing is illegal, void, and contrary to 45 C.F.R. § 205.10(a)(6) and (10)(b)(1) and 42 U.S.C. § 1396 *et seq.*;

(d) Declare that 42 C.F.R. § 449.33(a)(4) is illegal and void as applied to the facts of this case to the extent that it has been interpreted

to permit termination of federal funding prior to a hearing.

(e) Declare that defendant's decision to terminate federal financial participation is not subject to the reconsideration process provided for in 42 U.S.C. § 1316(d) and 45 C.F.R. § 201.14 and interim regulations, but is subject to review pursuant to 42 U.S.C. 1396c;

(f) Declare 45 C.F.R. § 201.14 and interim regulations authorizing disallowance of federal financial participation prior to an opportunity to be heard are void on their face and as applied are an abuse of discretion;

(g) Permanently enjoin the operation of 45 C.F.R. § 201.14 and interim regulations on the above stated grounds without first affording prior notice with an opportunity to be heard;

(h) Direct defendant to restore monies previously disallowed and reimburse plaintiffs for monies expended by the plaintiffs on be-

ages in excess of $10,000. While it is true that plaintiffs seek several "declarations" regarding the invalidity of various HEW regulations and the illegality of the Secretary's actions thereunder, this relief is merely incidental to the primary remedy requested: an order directing payment of the monies withheld by the Secretary. The declaratory relief sought simply establishes plaintiffs' legal entitlement to this principal remedy, and does not expand it in any meaningful way.[5] *See Cape Fox Corp. v. United States*, 456 F.Supp. 784, 794 (D.Alaska 1978).

Plaintiffs also seek an injunction against the continued application of the regulation authorizing the Secretary's disallowance of continued federal payments with respect to a decertified provider of services. Nowhere in the amended complaint, however, is it alleged that this regulation is in current use to deprive plaintiffs of any benefit. Rather, the gist of their claim is that its application in the past with respect to the three nursing homes discussed above operated to deprive them of federal funds to which the Act entitled them. This claimed injury can be redressed fully by an award of damages, if plaintiffs' allegations are proven correct. In such a situation, injunctive relief would be inappropriate, *O'Shea v. Littleton*, 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974); *United States v. Maidman*, 340 F.Supp. 395, 399 (S.D.N.Y.1971) (Motley, J.); 11 Wright & Miller, *supra*, § 2942 at 368–69, 371, and a claim for such relief is therefore insufficient to bypass the exclusive jurisdiction of the Court of Claims. This requested remedy, like the declaratory judgment discussed above, is at most ancillary to the claim for damages.

■ Finally, plaintiffs' attempt to ground jurisdiction in the mandamus stat-

ute, 28 U.S.C. § 1361, is unavailing. Although that provision is an independent basis for jurisdiction in the district courts, the extraordinary relief it provides is unavailable when adequate alternative remedies exist. *Ex parte Republic of Peru*, 318 U.S. 578, 584, 63 S.Ct. 793, 797, 87 L.Ed. 1014 (1943); *Kennecott Copper Corp., Nevada Mines Division v. Costle*, 572 F.2d 1349, 1356 (9th Cir. 1978); *Cartier v. Secretary of State*, 506 F.2d 191, 199 (D.C.Cir.1974), *cert. denied*, 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *Grant v. Hogan*, 505 F.2d 1220, 1225 (3d Cir. 1974). In this case, the alternate remedy of damages is available in the Court of Claims, 28 U.S.C. § 1491, and would clearly be adequate, since the only relief in the nature of mandamus sought by plaintiffs is an order that the Secretary pay them the disputed sums. *See Cape Fox Corp. v. United States, supra*, 456 F.Supp. at 793.

Thus, it is apparent, despite plaintiffs' efforts to recast this action in a form subject to this court's authority, *see Warner v. Cox, supra*, 487 F.2d at 1304; *Ove Gustavsson Contracting Co. v. Floete, supra*, 278 F.2d at 914, that plaintiffs' claim is, in the final analysis, simply one for a specific sum of money, more than $10,000, allegedly owed it by the government. Therefore jurisdiction rests exclusively in the Court of Claims.

■ This court, though without jurisdiction to decide the merits of the case, is empowered to transfer it to the Court of Claims if the interests of justice so require. *Peltzman v. Smith*, 404 F.2d 335, 336 (2d Cir. 1968); 28 U.S.C. § 1406(c). Factors to be considered in determining whether transfer is appropriate typically include whether the statute of limitations has oth-

---

half of resident–patients situated in the affected homes during the period following termination of federal financial participation but prior to removal of the resident–recipients from the homes.

   (i) Direct defendant to pay plaintiffs' interest from the date of judgment together with the costs of this action;

   (j) Provide such other relief as may be appropriate.

5. Although plaintiffs do not claim otherwise, it is appropriate to note that the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, pursuant to which the declaratory relief is sought, is not a jurisdictional statute. Rather, it merely increases the range of remedies available to a litigant properly before the court. *Estate of Watson v. Blumenthal, supra*, 586 F.2d at 928.

erwise run, the convenience of the parties and witnesses, and the effect on the efficient and expeditious administration of justice. *E. g., Sherar v. Harless, supra,* 561 F.2d at 794; *Eccles v. United States,* 396 F.Supp. 792, 796 (D.N.D.1975). However, if plaintiffs have failed to exhaust available administrative remedies, as defendant contends, it will be unnecessary to reach these factors, as no purpose would be served by transferring a case not yet ripe for adjudication.

■ Resolution of this question depends upon under which provision of the Act this action may properly be brought. Plaintiffs assert that the appropriate review provision is 42 U.S.C. § 1396c, which would require the Secretary to provide New York with notice and opportunity for a hearing before discontinuing payments.[6] Defendant, on the other hand, contends that the controlling provision is 42 U.S.C. § 1316(d), which allows the Secretary to cut off payments initially and then provides a state with an administrative appeal.[7]

Section 1396c deals with disputes between the Secretary and a state over the "conformity" of the state's plan with the requirements of the Act. When the Secretary finds, after affording the state an opportunity for a hearing on notice, either that the state's plan has been altered in such a way that it no longer complies with Act or that the state has failed to comply with the Act in its administration of the plan, she is obligated to suspend payments to the state. 42 U.S.C. § 1396c. Section 1316(d) relates to a completely different type of dispute, where the state's plan is not questioned, but the Secretary disallows individual items or classes of items for which the state claims to be entitled to reimbursement. 42 U.S.C. § 1316(d). This simple description of the two provisions makes it apparent that the dispute in this case involves disallowance of a class of items–claims relating to three decertified nursing homes–and not "plan conformity." *Compare, e. g., Medical Services Administration v. United States,* 590 F.2d 135 (5th Cir. 1979), *and State of Georgia, Dep't of Human Resources v. Califano,* 446 F.Supp. 404 (N.D.Ga.1977) (section 1316(d) cases), *with State Department of Public Welfare v. Califano,* 556 F.2d 326 (5th Cir. 1977), *cert. denied,* 439 U.S. 818, 99 S.Ct. 78, 58 L.Ed.2d 108 (1978), *and Solomon v. Califano,* 464 F.Supp. 1203 (D.Md.1979) ("plan conformity" cases). This conclusion is further bolstered by the fact that, at least initially, New York apparently shared it: when the state requested reconsideration of the Secretary's disallowance, it explicitly relied in so doing upon "Section 1116(d) of the Social Security Act," 42 U.S.C. 1316(d), and the relevant regulations promulgated thereunder. Amended Complaint, Exhibit 27 (letter requesting administrative reconsideration); *see also* Exhibits 30, 33 (same for later disallowances).

Therefore, in this case involving a section 1316(d) dispute, New York is entitled to, and requested, an administrative reconsideration of any disallowance by the Secretary of its claims, 42 U.S.C. § 1316(d), and,

---

**6.** 42 U.S.C. § 1396c provides:

If the Secretary, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of the State plan approved under this subchapter, finds–

 (1) that the plan has been so changed that it no longer complies with the provisions of section 1396a of this title; or

 (2) that in the administration of the plan there is a failure to comply substantially with any such provision;

the Secretary shall notify such State agency that further payments will not be made to the State (or, in his discretion, that payments will be limited to categories under or parts of

the State plan not affected by such failure), until the Secretary is satisfied that there will no longer be any such failure to comply. Until he is so satisfied he shall make no further payments to such State (or shall limit payments to categories under or parts of the State plan not affected by such failure).

**7.** 42 U.S.C. § 1316(d) provides:

Whenever the Secretary determines that any item or class of items on account of which Federal financial participation is claimed under subchapter ... XIX ... shall be disallowed for such participation, the state shall be entitled to and upon request *shall receive* a reconsideration of the disallowance.

as plaintiffs acknowledge, these requests for reconsideration are still pending before HEW's Grant Appeals Board. *See* 45 C.F.R. Part 16. Plaintiffs thus have not exhausted the available administrative remedies, which is generally a prerequisite to judicial review of an agency decision. *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Touche Ross & Co. v. SEC*, 609 F.2d 570, 574 (2d Cir. 1979); *Sterling Drug, Inc. v. Weinberger*, 384 F.Supp. 557, 560 (S.D.N.Y.1974) (Pierce, J.), *aff'd*, 509 F.2d 1236 (2d Cir. 1975). Plaintiffs counter that exhaustion should not be required here because resort to administrative processes would result in irreparable injury to the state and its Medicaid recipients, and because it is not required by the Administrative Procedure Act.

▮▮▮ It is difficult to fathom the reasoning behind this first argument. No Medicaid recipients have been denied services due to the Secretary's action at any time, much less in any ongoing way, and, in fact, no recipients remain in the three decertified facilities. The only harm suffered by plaintiffs resulted from the deprivation of the funds in dispute here, which hardly constitutes irreparable injury. *Cf. Aquavella v. Richardson*, 437 F.2d 397 (2d Cir. 1971) (nursing home that suffered immediate, irreparable injury when HEW suspended its certification to receive Medicare payments was not required to exhaust administrative remedies prior to judicial review). As to the Administrative Procedure Act, 5 U.S.C. § 704, provides for judicial review of "final agency action." Where an administrative review is explicitly provided by statute, as here, 42 U.S.C. § 1316(d), the initial agency action for which such review is available cannot constitute final action. *See Bristol–Myers Co. v. FTC*, 469 F.2d 1116, 1118 (2d Cir. 1972); *American Cyanamid Co., Lederle Laboratories Division v. Roudebush*, 411 F.Supp. 1220, 1222 (S.D.N.Y.1976) (MacMahon, J.). The Administrative Procedure Act does not provide a basis for bypassing the review process created by the Act.

Neither the interests of justice nor judicial economy, *see Mendoza v. Lavine*, 412 F.Supp. 1105, 1108 (S.D.N.Y.1976) (Duffy, J.), would be served by transferring this case to the Court of Claims, which certainly would dismiss it for plaintiffs' failure to exhaust administrative remedies. *See Clincher v. United States, States of Montana and Arizona*, 499 F.2d 1250, 1254–55 (Ct.Cl.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975); *Zidell Explorations, Inc. v. United States*, 192 Ct.Cl. 331, 427 F.2d 735, 737 (1970). Accordingly, defendant's motion is granted and the complaint is dismissed for lack of subject matter jurisdiction, without prejudice to the filing of an appropriate action in the Court of Claims after the completion of the administrative review process.

IT IS SO ORDERED.