**STATE OF NEW JERSEY, Petitioner,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 81–1175.

United States Court of Appeals, Third Circuit.

Argued Oct. 29, 1981.

Decided Feb. 11, 1982.

James R. Zazzali, Atty. Gen., N. J., Trenton, N. J., for petitioner; Erminie L. Conley, Asst. Atty. Gen., Trenton, N. J., of counsel; Robert J. Haney, Deputy Atty. Gen. (argued), Trenton, N. J., on brief.

Nancy M. P. King (argued), Dept. of Health and Human Services, Baltimore, Md., for respondent; Jeffrey Golland, Dept. of Health and Human Services, Washington, D. C., of counsel.

Before ADAMS, ROSENN and SLOVITER, Circuit Judges.

### OPINION OF THE COURT

ADAMS, Circuit Judge.

New Jersey petitions for review of a decision by the Grant Appeals Board of the Department of Health and Human Services (HHS) disallowing reimbursement to the State under the Medicaid program for medical services provided by a nursing home that, according to the Department, had been improperly certified. Because we conclude that the controlling legislation does not authorize direct review by a court of appeals of this type of determination by the Board, we dismiss New Jersey's petition for want of jurisdiction.

### I

Under the Medicaid program (Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq.), eligible individuals who receive medical assistance generally are not billed for any services rendered to them. Rather,

the "provider" of such services seeks reimbursement of its expenses from the "single state agency"[1] responsible for administering the state's Medicaid arrangement and for distributing federal funds. In order to qualify for reimbursement, a provider institution, such as a nursing home, must enter into a "provider agreement" with the single state agency.[2] That agreement is contingent upon certification by a "state survey agency"[3] that the facility in question meets certain federal standards.[4]

On October 21, 1975, the New Jersey Department of Health—the State's Title XVIII and Title XIX survey agency[5]—conducted a "licensure walk-through" of Springview Nursing Home, a new facility located in Freehold, New Jersey. Grant Appeals Board Decision No. 137 (Dec. 1, 1980), Appendix at 10a. Based on its inspection, New Jersey's single state agency (the Division of Medical Assistance and Health Services) executed a provider agreement with Springview covering the Medicaid program. Appendix at 54a. On October 23, 1975, the single state agency requested a statement from the survey agency "to the effect that [Springview] meets the standards for Medicaid participation." Record at 3–1. In response, the director of the survey agency issued the following hand-written note: "10/28/75. Now meets the Standards for Medicaid participation." *Id.*

In January 1976, Springview also sought to enter into a provider agreement with respect to the Medicare program. That agreement was not forthcoming, however, because a joint Title XVIII-Title XIX survey conducted on January 12 and 13 revealed operating deficiencies sufficient to render the institution ineligible for both Medicare and Medicaid funds. Record at 5–1 to 5–74. Only after Springview committed itself to and undertook a plan of correction did the facility receive approval, effective March 22, 1976, for Medicare participation. Grant Appeals Board Decision, *supra*, Appendix at 10a.

Citing the results of the January 1976 survey, HHS refused to honor New Jersey's subsequent request for reimbursement for Medicaid-related services provided at Springview during the October 1975 to March 1976 period. Record at 11–1 & 16–1. The State's claim, which totaled $221,824, was disallowed by the Administrator of HHS' Health Care Financing Administration on the ground that a provider agreement could issue only after a full-fledged Title XIX certification survey, such as that conducted in January 1976, as opposed to October 1975's mere "licensure walkthrough." Record at 56–1 to 56–3.

New Jersey appealed the Administrator's determination to the HHS Grant Appeals

---

1. In relevant part, 42 U.S.C. § 1396a(a)(5) specifies that a state plan for medical assistance must "provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan."

2. According to 42 U.S.C. § 1396a(a)(27), a state Medicaid plan must

  provide for agreements with every person or institution providing services under the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency or the Secretary with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency or the Secretary may from time to time request.

3. State survey agencies are "responsible for establishing and maintaining health standards for private or public institutions in which recipients of medical assistance under the plan may receive care or services," as well as for "establishing and maintaining standards, other than those relating to health, for such institutions." 42 U.S.C. § 1396a(a)(9).

4. Nursing home standards in effect for the period discussed here were codified at 45 C.F.R. § 249.10 (1976 ed.) (current version at 42 C.F.R. §§ 405.1101–1137). The appropriate licensing and certification procedures were described at 45 C.F.R. § 249.33 (1976 ed.) (current version at 42 C.F.R. §§ 431 & 442).

5. The same survey agency performs licensing and certification duties under both the Medicare (Title XVIII of the Social Security Act) and the Medicaid (Title XIX) programs. *See* 42 U.S.C. § 1396a(a)(9)(A) (incorporating 42 U.S.C. § 1395aa(a)).

Board, which affirmed the disallowance, albeit on a different ground. *See* Grant Appeals Board Decision, *supra*, Appendix at 9a–14a. The Board declined to decide whether the Department of Health's failure fully to survey Springview nullified the October 21, 1975, provider agreement. Rather, the Board held that, although there existed no explicit statutory or regulatory requirement that any particular form be completed in certifying a nursing home for Title XIX eligibility, a survey agency was obligated to "communicate certain information" to the single state agency before Medicaid funds could be made available with respect to that institution. Specifically, the Board stated that the survey agency must record "[t]he duration of the certification period, the type of facility involved, whether the facility is in compliance with program requirements, and the existence of [any] special conditions." [6] Applying this standard, the Board concluded that the "one-line note" penned by the director of New Jersey's survey authority did not constitute an "effective" certification of Springview. Grant Appeals Board Decision, *supra*, Appendix at 13a.

On appeal to this Court, New Jersey contends that: (1) because neither statute nor regulation mandates that a particular form be used or that specific information be provided when a state survey agency represents that a nursing home meets certification criteria, HHS "elevated form over substance" by refusing to accept the written memorandum involved here; (2) in this instance, the single state agency actually was aware of all the "information" that the Board deemed necessary for the agency to know in making a Title XIX eligibility determination; (3) because of "a severe shortage of nursing home beds available for New Jersey's Medicaid recipients," informal and expedited certification procedures were necessary; and (4) by imposing a "huge forfeiture" in a situation where there was no damage to Medicaid recipients themselves, HHS violated the principle of "cooperative federalism." Brief for Petitioner at 14–19.

## II

■ New Jersey maintains that its petition is properly before this Court pursuant to 42 U.S.C. § 1316(a), which authorizes direct appellate review of a determination by the Secretary of HHS that a state's Medicaid plan is not in compliance with federal statutes and regulations. HHS insists, on the other hand, that the present controversy is more appropriately classified as a disallowance dispute, and therefore should be reviewed under 42 U.S.C. § 1316(d), which does not provide for initial consideration by a court of appeals.

A jurisdictional question similar to the one presented here was discussed and resolved in two recent decisions of this Court, both of which, in fact, involved these same litigants. *See State of New Jersey v. Department of Health and Human Services,* 670 F.2d 1262 (3d Cir. 1981) (hereinafter referred to as *New Jersey* I); *State of New Jersey v. Department of Health and Human Services,* 670 F.2d 1284 (3d Cir. 1982) (hereinafter referred to as *New Jersey* II). In view of these decisions, we believe it unnecessary once again to identify the various differences between section 1316(a) and section 1316(d) procedures or to justify why "a court of appeals is obligated to look beyond the label the Secretary puts on his or her actions, and instead is required to conduct an independent evaluation of the underlying substance of the dispute." *New Jersey* I, at 1272. Rather, we believe it appropriate to explain only why we have concluded, in contrast to the result reached in the previous two cases, that the petition for review presented by New Jersey cannot be entertained for jurisdictional reasons.

---

**6.** The Board noted that information of this type is "routinely" furnished on a completed Form SSA–1539, the submission of which is "the accepted and customary method of certifying a facility for Medicaid participation." If a state "elects not to use" Form 1539, the Board concluded, it "must assume the risk that the means it uses to certify a facility may be questioned by [HHS]." Grant Appeals Board Decision, *supra*, Appendix at 13a.

In *New Jersey* I, this Court determined that review under section 1316(a) was in order where a state raised "difficult and significant legal issues having to do with the construction of the Social Security Act ... and [with] the legality of certain HHS administrative actions." At 1273. Similarly, in *New Jersey* II, section 1316(a) procedures were deemed appropriate where the dispute involved "the coverage of certain individuals under the Medicaid program, the estoppel of a federal agency for its allegedly misleading advice to state officials, and the ability of a state retroactively to alter provisions of its Social Security plan so as to maximize its receipt of federal dollars." At 1291. In both cases, we concluded that HHS "in effect" had found that New Jersey, in the overall administration of one of its state Social Security plans, was not conforming with applicable federal requirements. *New Jersey* I, at 1273; *New Jersey* II, at 1291–1292.

Unlike *New Jersey* I and *New Jersey* II, however, the administrative decision about which New Jersey here complains in no way affects its entire Medicaid plan. Quite simply, HHS did not determine that the State's Title XIX arrangement, either in whole or in part, was defective, either on its face or in its administration. Instead, the Department merely refused to credit the State for expenses incurred for a limited period of time at a single nursing home that the agency believed was improperly certified. In our view, the denial of reimbursement in such an isolated instance and for such a discrete reason constitutes an almost archetypical section 1316(d) situation—that is, a situation where "the Secretary disallows specific State expenditures for Federal financial participation," *see* S.Rep.No.404, 89th Cong., 1st Sess., *reprinted in* [1965] U.S.Code Cong. & Ad.News 1943, 2091. We cannot hold that the failure of New Jersey's survey authority properly to inform the single state agency about the Medicaid status of Springview Nursing Home somehow

"implicate[d] the administration of ... New Jersey's [Medicaid] program as a whole," *New Jersey* I, at 1275, and therefore entitled the State to the full panoply of section 1316(a)-review procedures.

Our classification of the present dispute as a "typical" disallowance matter, appropriate for consideration in connection with 42 U.S.C. § 1316(d), is consistent with the position adopted by a number of other federal courts in similar cases. In *Wingate v. Harris*, 501 F.Supp. 58 (S.D.N.Y.1980), for example, New York challenged HHS' refusal to reimburse it for expenses incurred by three institutions adjudged by the Department not to meet federal standards for "skilled nursing care facilities." The court held that section 1316(d) procedures were in order, instead of those associated with section 1316(a), because "the dispute in this case involves disallowance of a class of items—claims relating to three decertified nursing homes—and not 'plan conformity.' " *Id.* at 63. Similarly, in *State of Washington, Department of Social and Health Services v. Schweiker*, No. 81–7414 (9th Cir. Sept. 29, 1981), a motions panel of the Ninth Circuit declined to review, for jurisdictional reasons, a Grant Appeals Board Decision, *see* No. 176 (May 26, 1981), disallowing Medicaid reimbursement with respect to two intermediate-care facilities for which, in the agency's opinion, valid provider agreements had not been obtained. And, in a situation in which a state-wide survey of twenty intermediate-care institutions revealed that one patient in one facility had not been properly certified as eligible for long-term inpatient treatment, *see* Grant Appeals Board Decision No. 167 (Apr. 30, 1981), the Sixth Circuit agreed with HHS' characterization of the controversy as a "disallowance" and dismissed the State's petition for lack of jurisdiction. *Department of Public Health, State of Tennessee v. Departmental Grant Appeals Board, HHS*, 672 F.2d 916 (6th Cir. 1981).[7]

---

**7.** For other "disallowance"-type decisions, *see Medical Services Administration v. United States*, 590 F.2d 135 (5th Cir. 1979); *County of Alameda v. Weinberger*, 520 F.2d 344 (9th Cir.

1975); and *State of Georgia, Department of Human Resources v. Califano*, 446 F.Supp. 404 (N.D.Ga.1977). *Compare Texas Department of Public Welfare v. Califano*, 556 F.2d 326 (5th

As a final matter, we reject New Jersey's contention that section 1316(a) procedures are necessary because the present controversy largely concerns a legal, and not a factual, question—namely, whether a handwritten notation, such as that relied on here by New Jersey's single state agency, constitutes sufficient certification of an institution's Medicaid eligibility. We repeat our earlier admonition: a state is not entitled to plan-conformity treatment

> merely because its challenge to the HHS "disallowance" is premised on legal, as opposed to factual, grounds. Had Congress wanted courts of appeals to review directly *all* legal matters surrounding the administration of a state's Social Security-type programs, it of course could have written § 1316 accordingly. Instead, Congress chose, for whatever reasons, to limit the exclusive jurisdiction of the federal appellate courts only to those situations involving plan conformity.

*New Jersey* I, at 1277 n.12.

Having concluded, for the above reasons, that a court of appeals does not have jurisdiction under 42 U.S.C. § 1316(a) to consider the disallowance objected to in this instance by New Jersey, we dismiss the State's petition for review.[8]

Cir. 1977), *cert. denied*, 439 U.S. 818, 99 S.Ct. 78, 58 L.Ed.2d 108 (1978); *Solomon v. Califano*, 464 F.Supp. 1203 (D.Md.1979). *See generally New Jersey* I, at 1273–1275; *New Jersey* II, at 1292.

8. We note that counsel for HHS has represented that "[i]f this Court determines to dismiss [this action] for lack of jurisdiction, there is no barrier to review in the district court of the Secretary's final disallowance determination.... [T]he Secretary will not challenge the jurisdiction of the district courts to review disallowance determinations. *See County of Alameda v. Weinberger*, 520 F.2d 344 (9th Cir. 1975)." Posthearing Submission for Respondent (Nov. 10, 1981), at 1.