COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Petitioner,

v.

Margaret HECKLER, Secretary of the Department of Health and Human Services; United States Department of Health and Human Services, and United States of America, Respondents.

Nos. 83–3190, 83–3280.

United States Court of Appeals, Third Circuit.

Argued Jan. 23, 1984.

Decided March 28, 1984.

Health and Human Services ("HHS") to reimburse DPW for certain expenses incurred in administering Pennsylvania's Aid to Families with Dependent Children ("AFDC") program. As is common with appeals of this nature, the knotty question of our jurisdiction overshadows the merits of the underlying dispute. We conclude that we have jurisdiction to hear Pennsylvania's appeal, and we will affirm the Secretary's denial of reimbursement.

## I.

On March 19, 1981, DPW entered into a cost-sharing agreement with the District Attorney of Philadelphia ("the Philadelphia DA"). Due to a dearth of funds and a surfeit of violent crimes, the Philadelphia DA had lagged far behind the rest of the state in prosecuting welfare fraud cases referred by DPW. To encourage the DA to enforce the welfare fraud statutes more zealously, DPW agreed to pay half the costs of prosecuting welfare cases in Philadelphia.

The cost-sharing plan achieved dramatic results. The DA established a Welfare Fraud Unit staffed by four lawyers, one administrative assistant, and a secretary. In 1980, the year before the agreement, the DA prosecuted only 16 cases. The next year that figure jumped to over 200 cases. In 1982, over 400 cases were prosecuted in the City of Philadelphia. By March, 1983, the DA had obtained restitution orders totalling $352,788 in AFDC cases, and an additional $552,800 from mixed AFDC/food stamp cases.

The District Attorney received $33,325 from DPW in the first year of the agreement. DPW, in turn, presented these costs to HHS for reimbursement as administrative expenses. The Regional Commissioner "disallowed" the claimed prosecution costs on October 15, 1982. The Commissioner relied on OMB Circular A–87, which establishes guidelines for allowable costs in fed-

Jason W. Manne, Dept. of Public Welfare, Harrisburg, Pa., for petitioner.

Javier A. Arrastia, Asst. Regional Atty. (argued), David R. Culp, Acting Regional Atty., Dept. of Health & Human Services, Philadelphia, Pa., for respondent.

Before HUNTER and WEIS, Circuit Judges, and DUMBAULD,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

The Department of Public Welfare of the Commonwealth of Pennsylvania ("DPW") appeals from a refusal by the Secretary of

* Honorable Edward Dumbauld, United States District Judge for the Western District of Penn-

eral grant programs.[1] As interpreted by the Social Security Administration, those guidelines prohibit reimbursement for the costs of prosecuting welfare fraud. Action Transmittal SSA–AT–78–8 (OFA) (March 16, 1978).

DPW petitioned the Departmental Grant Appeals Board to reconsider the disallowance. On May 18, 1983, the Appeals Board upheld the disallowance. DPW, intent on judicial review but unsure of the proper forum, filed simultaneous appeals in this court and the District Court for the Middle District of Pennsylvania.[2]

## II.

The jurisdictional predicament that prompted DPW's simultaneous appeals has come before this court four times in the last two years. In the *New Jersey* trilogy, we devised and applied a functional test for ascertaining appellate jurisdiction from HHS denials of claimed costs. *New Jersey v. Department of Health & Human Services,* 670 F.2d 1262, 1268–77 (3d Cir.1981) *(New Jersey I); New Jersey v. Department of Health & Human Services,* 670 F.2d 1284, 1290–92 (3d Cir.), *cert. denied,* 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982) *(New Jersey II); New Jersey v. Department of Health & Human Services,* 670 F.2d 1300 (3d Cir.1982) *(New Jersey III).* More recently, we applied our functional test to a case involving the parties before us today. *Commonwealth of Pennsylvania v. Department of Health & Human Services,* 723 F.2d 1114 (3d Cir.1983).[3]

sylvania, sitting by designation.

1. OMB Circular A–87 is incorporated by reference at 45 C.F.R. § 74.171 (1983). It thus carries the force of HHS regulations.

2. Since the time of the initial appeal; the Secretary has denied reimbursement for prosecution costs claimed by DPW for subsequent quarters. DPW has appealed these denials to our court, and we have consolidated the two appeals in our decision.

3. Other circuits faced with the problem presented here have fashioned jurisdictional tests of their own. *See, e.g., Georgia Dep't of Medical Assistance v. Dep't of Health & Human Services,* 708 F.2d 627 (11th Cir.1983); *Illinois v. Schweiker,* 707 F.2d 273 (7th Cir.1983); *Massa-*

The recurring and complex nature of this jurisdictional problem stems from the obscure statutory directive of 42 U.S.C. § 1316 (1976). That provision prescribes two distinct procedures for reviewing disputes regarding reimbursement for state programs. The first provides direct review in the court of appeals of disputes in which the Secretary determines that the state program is not "in compliance" with federal requirements.[4] The Secretary must afford the state a formal hearing, and is subject to stringent time restrictions. 45 C.F.R. § 213 (1982). The Secretary is given concomitantly sweeping powers: following a finding of noncompliance, she may cut off all payments to the state, not merely those for the disputed items. 42 U.S.C. § 604(a) (1976); 45 C.F.R. § 201.6(a) (1982).

The second avenue, termed a "disallowance" proceeding, is considerably less formal, and affords the Secretary a more limited sanction. Items may be disallowed by the Regional Commissioner without a hearing or other substantial formal proceeding. The state is entitled to reconsideration by the Departmental Grant Appeals Board of the disallowance, but the Board need not hold a hearing and is not bound to decide within any time limits. A disallowance determination entitles the Secretary to refuse payment only for the disputed item. 42 U.S.C. § 1316(d) (1976); 45 C.F.R. § 16 (1983).

■ For purposes of this case, the most pertinent feature of disallowance proceed-

*chusetts v. Departmental Grant Appeals Board,* 698 F.2d 22 (1st Cir.1983).

4. Section 604(a) permits the Secretary to deny reimbursement

if the Secretary, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of such plan, finds—

.   .   .   .   .

(2) that in the administration of the plan there is a failure to comply substantially with any provision required by section 602(a) of this title to be included in the plan....

42 U.S.C. § 604(a) (1976). *See also* 45 C.F.R. § 201.6(a) (1982).

ings is that section 1316(d), unlike section 1316(a), makes no provision for judicial review. Some courts have concluded that an appeal necessarily must lie in the district court. *See Illinois v. Schweiker,* 707 F.2d at 276–77; *County of Alameda v. Weinberger,* 520 F.2d 344 (9th Cir.1975). The Secretary herself takes this position. *New Jersey III,* 670 F.2d at 1304 n. 8. This court has never had an opportunity to decide that question, nor need we here. For present purposes we need only note that appeal does *not* lie in the court of appeals from disallowance proceedings. *New Jersey I,* 670 F.2d at 1271.

■ Our jurisdiction to review disputes regarding AFDC reimbursements, then, depends on whether the dispute is characterized as a compliance or a disallowance matter. In the present case, the Secretary plainly characterized the dispute as a disallowance matter, and treated it accordingly. Were we to look no further than the record of the Secretary's action below, we would dismiss the petition for review and invite Pennsylvania to test the jurisdiction of the district court. This court, however, has declined "to adopt an approach which would permit the Secretary to foreclose judicial review under section 1316(a) in situations where one administrative route is pursued when another would be more appropriate." *New Jersey I,* 670 F.2d at 1272. Rather, we have held that

> a court of appeals is obligated to look beyond the label the Secretary puts on his or her actions, and instead is required to conduct an independent evaluation of the underlying substance of the dispute. To do otherwise ... would make the jurisdiction of a court of appeals contingent upon the Secretary's unfettered discretion.

*Id.*

That determination is not an easy one to make, for Congress has given us little guidance in the language of the statute or in the legislative history. Drawing on the meager indicia of legislative intent, and following an established line of Fifth Circuit cases, this court in *New Jersey I* broad-

ly outlined the differences between compliance and disallowance matters. Compliance disagreements, we stated, "concern either the validity of a state's plan as a whole or its overall administration." *New Jersey I,* 670 F.2d at 1271. Disallowance disputes, on the other hand, "are far more narrowly focused: they generally arise 'in connection with a routine audit' and involve 'the accuracy of [that] audit.'" *Id.* (quoting *Medical Services Administration v. United States,* 590 F.2d 135, 136 (5th Cir. 1979)).

Because most reimbursement disputes neither affect the plan as a whole nor arise from a routine audit, the broad definitions we stated in *New Jersey I* have given state and federal litigants little practical guidance. The Seventh Circuit, for one, has critically termed our functional approach "complicated and therefore uncertain in application—a serious weakness in a jurisdictional test." *Illinois v. Schweiker,* 707 F.2d at 278. That court has adopted a policy of deferring to the label the Secretary has chosen to apply in each case, obviating any jurisdictional inquiry by the reviewing court.

We are as mindful as the Seventh Circuit that jurisdictional tests should be simple and certain. But we are aware also of Congress's intention that disputes regarding state compliance should be directly and speedily resolved through immediate review in the courts of appeals. The pragmatic approach charted in the *New Jersey* trilogy was designed to prevent the Secretary from frustrating that intention.

Moreover, this circuit's approach is not so "uncertain in application" as to be unworkable as a jurisdictional test. Indeed, in its application that test has yielded quite consistent—and thus quite certain—results. As a review of our cases reveals, our functional approach has in fact drawn the "clean line" that all agree is essential in jurisdictional matters.

In *New Jersey I,* HHS had refused to reimburse New Jersey for child-support enforcement services that the state had provided to non-welfare recipients who had not

filed applications required by HHS regulations. Though this dispute involved only a limited number of individuals, and involved only their failure to complete the proper application form, we labeled it a "compliance" matter and granting the petition for review. 670 F.2d at 1277. *New Jersey II* involved a similarly narrow controversy—whether the state was entitled to amend its plan retroactively to extend coverage to certain aged, institutionalized individuals who were eligible for federal funds but had inadvertently been excluded under the state plan. Again, only a limited number of individuals were affected; moreover, the dispute involved reimbursement only for a limited period already past. The *New Jersey II* court nevertheless characterized it a compliance dispute. 670 F.2d at 1292.

In our most recent decision in this area, *Commonwealth of Pennsylvania v. Department of Health & Human Services*, 723 F.2d 1114 (3d Cir.1983), Pennsylvania sought reimbursement for abortions performed between the date the Hyde Amendment took effect and the earliest date Pennsylvania could notify welfare recipients of the new restriction on abortion funding. Although this dispute could also be characterized as a narrowly focused controversy of only limited, past effect, this court once again termed it a compliance matter. 723 F.2d at 1118.

Only once has this court applied the disallowance label to a reimbursement dispute. *New Jersey III*, 670 F.2d at 1304. There, the dispute centered on whether an official's one-line handwritten notation approving a nursing home was sufficient to certify the home for Medicaid purposes. Terming this an "almost archetypical" disallowance situation, the *New Jersey III* court noted that the Secretary "merely refused to credit the State for expenses incurred for a limited period of time at a single nursing home." *Id.* at 1303. Only in this "almost archetypical" situation did we apply the disallowance label and deny review.

The pattern that emerges from these cases is clear. While *New Jersey I* spoke of compliance disputes as concerning "the validity of a state's plan as a whole or its overall administration," 670 F.2d at 1271, in practice we have applied the compliance label to all but those disputes involving the most technical minutiae. Viewed from the standpoint of results, our functional approach draws very nearly as bright a line as the Seventh Circuit's approach—and, we believe, in a manner more true to congressional intent.

■ Based on the foregoing discussion, the result in this case is clear. DPW seeks to include part of the Philadelphia DA's welfare prosecution expenses as reimbursable costs. The Secretary, hewing to departmental policy that prosecution expenses are not permissible administrative expenses, has repeatedly refused reimbursement. This is certainly not an "audit-related" dispute, nor does it concern technical minutiae such as the validity of a one-line handwritten notation. It is therefore a compliance matter, and the Secretary should have treated it as such from the outset. We grant DPW's petition for review, and turn finally to the merits of the dispute.

### III.

■ At the heart of this controversy is whether Philadelphia's welfare prosecution costs fall under the category of reimbursable administrative expenses. We affirm the Secretary's determination that they do not.

Section 602, which describes the elements a state AFDC program must include, grants the Secretary broad discretion to determine the administrative methods that are "reasonable and necessary for the proper and efficient operation of the plan." 42 U.S.C. § 602(a)(5) (1976). Pursuant to this authority, the Secretary has issued guidelines to identify the state administrative expenses that the federal government will reimburse. OMB Circular A-87 defines as reimbursable those costs that are "necessary and reasonable for proper and efficient administration of the grant program, ... and ... [are not] a general

expense required to carry out the overall responsibilities of State [or] local ... governments." [5]

DPW does not challenge the validity of OMB Circular A–87, or of the limitation that general government expenses are not reimbursable. Nor does DPW challenge the facial validity of the Secretary's further interpretation that welfare fraud prosecution costs are nonreimbursable general government expenses.[6] Rather, DPW challenges the application of that general rule to its cost-sharing agreement with the Philadelphia DA.

DPW contends that while criminal prosecutions are certainly part of a government's "overall responsibility," welfare fraud prosecutions within Philadelphia are different, and ought to be exempted from the general rule. Over the years, says DPW, a set of circumstances unique to Philadelphia had brought welfare fraud prosecution to a virtual standstill. Subject to the financial constraints that have plagued big-city budgets, and overwhelmed by the volume of violent crime, the Philadelphia DA for many years assigned welfare fraud a low priority. Thus, while Philadelphia concededly had the obligation to enforce the welfare fraud provisions, Philadelphia's unique big-city problems rendered those provisions unenforceable. Only because of the 1981 cost-sharing agreement, argues DPW, does Philadelphia have the resources now to enforce the welfare laws effectively. DPW's expenditures under the 1981 agreement, then, do not subsidize Philadelphia in the performance of its general obligations, but rather make it possible for Philadelphia to bring welfare fraud prosecutions it could not otherwise bring. Therefore, concludes DPW, Action Transmittal SSA–AT–78–8 sweeps too broadly, and the Secretary should be made to except

expenditures under the 1981 agreement from its flat proscription.

We decline to accept DPW's conclusion. Section 602 grants the Secretary considerable latitude in determining what administrative methods are "necessary" for the operation of a state plan. Notwithstanding DPW's argument that the peculiar plight of Philadelphia justifies a special rule, we find nothing in the Social Security Act or the Secretary's regulations requiring the Secretary to make such an exception.

All cities and counties, large and small, face budgetary restraints, and all prosecutors must decide how to allocate the scarce resources given them. Philadelphia for many years chose to allocate almost nothing to prosecuting welfare fraud. No rule or statute forbade Philadelphia from allocating more to welfare cases; the city simply preferred to spend its money elsewhere. Other cities and counties, faced with many of the same problems as Philadelphia, albeit on a lesser scale, chose to devote a larger portion of their scarce resources to welfare enforcement. As a consequence, they have had less to spend on other programs over the years.

We are unwilling to foist on the Secretary the task of determining on a case-by-case basis which prosecutors are entitled to special treatment and which are not. The Secretary's flat proscription against subsidizing the costs of prosecution is not an unreasonable one, and we will not disturb it.

Accordingly, we will affirm the decision of the Secretary as rendered by the Departmental Grant Appeals Board.

---

**5.** As noted in footnote 1, *supra,* 45 C.F.R. § 74.171 (1983) incorporates OMB Circular A–87 and gives it the force of a regulation.

**6.** *See* Action Transmittal SSA–AT–78–8 (OFA) (March 16, 1978), which states in relevant part:
 Federal financial participation will not be available for:

*1. Prosecution Activities*
The prosecution of suspected fraud cases before courts or a grand jury or to enforce court decisions in such cases. These activities are considered general government expenses and are not subject to Federal financial assistance under Title IV A.