**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, Plaintiff,**

v.

**UNITED STATES of America, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 88–2160.**

United States District Court, W.D. Pennsylvania.

Feb. 6, 1990.

*Stephenson,* 510 F.Supp. 840, 843 n. 3 (M.D.N.C. 1981); *see also Douglas v. California,* 372 U.S. 353, 357, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963).

Jason W. Manne, Dept. of Public Welfare, Pittsburgh, Pa., for plaintiff.

Terry M. Henry, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## OPINION

COHILL, Chief Judge.

This dispute over Medicaid funding and reimbursement arises from amendments to the Medicaid Act in the early 1980's which significantly reduced federal contributions to state administered programs. The Commonwealth challenged those reductions and also attempted to offset the loss of funds by implementing new fraud recovery programs to increase the reimbursement. After an unfavorable decision from the United States Department of Health and Human Services on both of these efforts, the Commonwealth appealed to this Court. The parties have now filed cross motions for summary judgment with briefs and the administrative record. There are no disputed issues of fact, and the matter is ripe for disposition.

### Count I

In 1981, Congress passed the Omnibus Budget Reconciliation Act of 1981 ("OBRA"), P.L. 97–25, 95 Stat. 357. One component of the Act was a series of cuts in federal funding of the Medicaid program. Under OBRA, the federal government's contributions to Medicaid were to be cut by 3% in 1982, 4% in 1983, and 4.5% in 1984. 42 U.S.C. § 1396b(s)(1)(A). As a trade-off for these cuts, Congress further amended Medicaid to give states greater flexibility in determining what persons or categories of persons the state would serve under Medicaid.

The Medicaid statute has traditionally classified Medicaid eligible persons in three categories. The "categorically needy" are persons who qualify for and receive some form of cash assistance, such as Supplemental Security Income ("SSI"), or Aid to Families with Dependent Children ("AFDC"). 42 U.S.C. § 1396a(a)(10)(A). The "optional categorically needy" are persons who qualify for cash assistance programs but who have chosen not to receive such assistance. *Id.* Finally, the "medically needy" are persons with income or resources that take them out of the "categorically needy" category, but who would otherwise qualify. 42 U.S.C. § 1396a(a)(10)(C).

Before 1981, if a state chose to serve any "medically needy" persons under Medicaid, it was required to serve all persons in that category. A state could not cover a subclass of medically needy persons without providing coverage to all. The 1981 amendments enacted in OBRA gave states the power to serve only selected classes of the medically needy. Thus a state faced with the federal funding reductions could theoretically save the money by withdrawing Medicaid coverage from some portion of the medically needy.

To prevent states from completely gutting their coverage of the medically needy, and to protect the most vulnerable members of that category, by the same amendments Congress required any state choosing to serve some category of the medically needy to cover at a minimum all medically needy persons who were a) under 18 years of age, or b) pregnant. In this manner Congress provided states with greater flexibility by allowing them to cover some but not all in the medically needy category, but it still ensured coverage for children and pregnant women. These various alterations to the medically needy category were codified at 42 U.S.C. § 1396a(a)(10)(C).

Finally, in § 1396b(s)(1)(B), Congress made the funding cuts at § 1396b(s)(1)(A) conditional on the enactment of regulations to implement § 1396a(a)(10)(C). In other words, the funding cuts were effective only if the Secretary followed through with Congressional changes to the medically needy category. Shortly after passage of the 1981 amendments, the Secretary enacted regulations to implement § 1396a(a)(10)(C).

The Secretary's new regulations covered all aspects of the new § 1396a(a)(10)(C). In addition to the statutory changes wrought by Congress, the new regulations made two other significant changes in the way § 1396a(a)(10)(C) functioned. Prior to OBRA, the medically needy category had been defined by employing methodology associated with the SSI and AFDC programs. Although the 1981 statutory amendments did not address the matter, the Secretary's new regulations permitted states to use other, more restrictive, methodologies to determine who was medically needy. Secondly, although the 1981 amendments to § 1396a(a)(10)(C) appeared to require coverage of all medically needy persons under age 18, the Secretary's new regulations permitted states to cover some but not all medically needy children.

These two aspects of the Secretary's implementing regulations brought a hailstorm of protest from Congress. Additional amendments to the Medicaid Act were passed in 1983 as part of the Tax Equity and Fiscal Responsibility Act ("TEFRA"), P.L. 97–248. Section 1396a(a)(10)(C) was further amended to return states to the SSI and AFDC methodology, and to make clear that coverage was to be provided to *all* medically needy persons under age 18. In short, Congress rejected the two controversial aspects of the Secretary's regulations. The 1983 amendments were made retroactive to the date of the original 1981 amendments, and the Medicaid program was to be administered as if the Secretary's regulations on these two points had never been enacted.

In essence the 1983 amendments made a nullity of the Secretary's regulations on two points. The Commonwealth reminds us that the funding cuts in OBRA were made conditional on passage of implementing regulations. Thus, plaintiff argues, the Secretary's failure to enact appropriate regulations constitutes a failure of the precondition to the funding cuts. Therefore the Secretary could not impose the funding cuts and the Commonwealth is entitled to additional reimbursement of $118,000,000.

But the simple fact is that the Secretary *did* enact a timely and complete set of regulations to implement § 1396a(a)(10)(C), thereby satisfying in a basic sense the precondition of § 1396b(s)(1)(B). Although Congress disagreed with two of those provisions and ultimately overrode them in TEFRA, they were enacted as required.

In this context it is important to remember that the implementing regulations covered more ground than the two controversial items. Those other provisions were not materially affected by the 1983 TEFRA amendments. TEFRA did not negate the entire regulatory scheme, but only two discrete provisions. Thus the bulk of the implementing regulations survived unaffected, and so the Secretary substantially satisfied the precondition in § 1396b(s)(1)(B).

Furthermore the Secretary cannot be said to have acted entirely without justification with respect to the two controversial provisions. The Secretary's approach to medically needy children under § 1396a(a)(10)(C) mirrors a sister provision of the Medicaid Act at § 1396d(a)(i), a provision specifically referred to in the amended § 1396a(a)(10)(C). The Secretary's new approach to eligibility methodology was arguably consistent with Congress' desire to provide states with greater flexibility in determining scope of coverage. The circumstances surrounding this provision were muddied considerably by a printing error. The published copy of an important Conference Report inadvertently omitted a critical passage in which congressional leaders made clear that Congress did not intend to alter the methodology for defining the medically needy.

In enacting TEFRA to correct these two wayward provisions, Congress made clear that it did not expect or intend to defeat the Medicaid cuts enacted in OBRA in 1981. To the contrary, Congress strongly indicated its expectation that the cuts were valid and would continue. TEFRA made adjustments to provisions permitting offsets to reduce the funding cuts. Such adjustments would have been unnecessary if Congress believed that the Secretary's

faulty regulations had prevented the cuts under § 1396b(s)(1)(B).

Congress designed these portions of TEFRA to correct any problems caused by the Secretary's two erroneous provisions. Applied retroactively as commanded by Congress, TEFRA not only overrode the two regulatory provisions at issue, it also eliminated the need for regulations on those points by dealing with them directly in the statute. Thus the remaining regulations, unaffected by TEFRA, alone satisfied the precondition of § 1396b(s)(1)(B).

It is also clear that by enacting TEFRA, Congress gave states the benefit of the original 1981 bargain. The federal government achieved its funding cuts while states were given greater flexibility under the Medicaid Act, within certain limits. Certainly Congress and the states neither intended nor expected that states would be granted the desired flexibility without being subjected to the cuts.

In the face of Congress' clear intent to enact and enforce the funding cuts, despite disagreements with the Secretary over implementing regulations, we are loathe to hold otherwise. For the reasons stated we conclude that the Secretary substantially satisfied the precondition of § 1396b(s)(1)(B) under both the 1981 OBRA amendments and the 1983 TEFRA amendments. Summary judgment will therefore be entered in favor of defendant on Count I.

### Count II—Jurisdiction

In Count II of its Complaint the Commonwealth appeals from the Department's denial of the 1% reimbursement under 42 U.S.C. § 1396b(s)(2) for qualifying fraud recovery programs. The Department concluded that Pennsylvania's two new fraud recovery programs did not satisfy the Department's regulations and therefore did not qualify Pennsylvania for the bonus reimbursement.

The Department challenges Count II on jurisdictional grounds. 42 U.S.C. § 1316. The Department argues that Count II is not a "disallowance" dispute permitting appeal to the District Court under § 1316(d), but is in fact a "compliance" dispute which must be appealed directly to the Court of Appeals under § 1316(a).

The Medicaid statute creates a two-tiered scheme for judicial review. Section 1316(a) provides for direct review by the Court of Appeals of "determinations involving conformity of a state's ... plan to federal standards." (i.e., compliance disputes). *State of New Jersey v. Department of Health and Human Services*, (New Jersey I), 670 F.2d 1262 (3d Cir.1981). On the other hand, a dispute involving denial of a specific item or class of items arising from a routine audit (i.e., a disallowance dispute) permits appeal only to the District Court in the first instance. 42 U.S.C. § 1316(d). *State of New Jersey v. Department of Health and Human Services*, (New Jersey III), 670 F.2d 1300 (3d Cir.1982).

In the instant case the Department treated the dispute at the administrative level as a disallowance dispute. The Commonwealth was not afforded the administrative hearing and procedures associated with a compliance dispute, but rather was relegated to the more informal processes of a disallowance dispute.

In accord with the Department's treatment of the case as a disallowance dispute, the Commonwealth filed its appeal with the District Court under § 1316(d). Now for the first time the Department contends that this is in fact a compliance dispute and this Court is without jurisdiction to hear the appeal.

The Commonwealth strongly objects to the Department's changing horses in the middle of the stream. The Commonwealth argues that the Department should not be permitted to characterize the dispute in one manner at the administrative level and then argue for a different characterization to defeat judicial review.

We sympathize with the Commonwealth. There is something inherently wrong in the Department's practice of applying whichever label gives it greatest advantage at a particular stage. But though we sympathize, we are also mindful of the special nature of subject matter jurisdiction.

■ A party cannot waive a lack of subject matter jurisdiction. Parties cannot create subject matter jurisdiction by stipulation, by conduct, or even by estoppel. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *Insurance Corp. of Ireland, Ltd. v. Campagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Indeed, a challenge to jurisdiction may be made at any stage of the litigation, and the Court has the obligation to raise the issue on its own motion. In short, the parties cannot confer upon the Court greater power than is provided by the Constitution and Congress. As the Supreme Court has stated, in two cases nearly 100 years apart:

> [T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.

*Insurance Corp. of Ireland, Ltd.*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492, 501, quoting *Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

■ The Commonwealth's estoppel argument is reminiscent of *DiFrischia v. New York Central Railroad Co.*, 279 F.2d 141, 144 (3d Cir.1960), in which this Circuit applied estoppel to prevent a tardy challenge to subject matter jurisdiction, on the premise that "a defendant may not play fast and loose with the judicial machinery and deceive the courts." However, subsequent decisions have made clear that *DiFrischia* was a wrongly decided aberration. *See, Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 377, n. 21, 98 S.Ct. 2396, 2404, n. 21, 57 L.Ed.2d 274, 284, n. 21 (1978); *Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir.1984). We conclude therefore that estoppel cannot be employed to prevent the Department's challenge to subject matter jurisdiction, even though the Department now contradicts the label it employed at the administrative level.

■ We turn then to consideration of the jurisdictional basis of Count II. The analytical framework to be employed in this Circuit was constructed in a trilogy of cases. *State of New Jersey v. Department of Health and Human Services* (New Jersey I), 670 F.2d 1262 (3d Cir.1981); *State of New Jersey v. Department of Health and Human Services* (New Jersey II), 670 F.2d 1284 (3d Cir.1982); *State of New Jersey v. Department of Health and Human Services* (New Jersey III), 670 F.2d 1300 (3d Cir.1982).

In these cases, the Court of Appeals held that the label employed by the Department at the administrative level is irrelevant to a determination of federal court jurisdiction. We are required to look beyond the administrative characterization of the dispute and determine from our own review of the case whether it is a compliance dispute which must be filed with the Circuit Court or a disallowance dispute which is properly filed here. Thus the Court's jurisdiction is grounded on an independent evaluation of the substance of the dispute rather than being dependent on the label affixed by the Secretary in the unfettered exercise of his discretion. *New Jersey I*, 670 F.2d at 1272.

The *New Jersey* trilogy and subsequent cases offer some guidance for our analysis. Compliance disputes generally center on whether a plan or portion of a plan complies with federal standards embodied in the statute and regulations. Such disputes involve difficult and significant legal issues and ordinarily do not arise from routine audits. On the other hand a disallowance dispute typically concerns a specific item or class of items for which reimbursement is denied in a routine audit. The compliance dispute typically raises significant policy issues concerning programs and the interpretation of the federal statute and regulations, while a disallowance dispute is an isolated and highly focused inquiry into a technical audit shortcoming. *See, New Jersey I*, 670 F.2d 1262; *New Jersey II*, 670 F.2d 1284; *New Jersey III*, 670 F.2d 1300; *Commonwealth v. Department of Health*

*and Human Services*, 723 F.2d 1114 (3d Cir.1983); *Delaware Division of Health and Social Services v. U.S. Department of Health and Human Services*, 665 F.Supp. 1104, 1113–1114 (D.Del.1987). Finally, in its most recent decision on this topic, the Court of Appeals noted that in practice it had "applied the compliance label to all but those disputes involving the most technical minutiae." *Commonwealth v. Heckler*, 730 F.2d 923, 927 (3d Cir.1984).

Reviewing the present case in this light it is clear that Count II of the Complaint concerns a compliance dispute. Reimbursement was denied because the Commonwealth's new fraud recovery programs did not comply with federal regulations. The Department's determination disqualified these entire programs, and not discrete items or classes of items. The dispute arose when the Commonwealth sought to include these new programs in its reimbursement calculations, adding significant new components to its state plan. The dispute did not arise from a routine audit. The issues presented by this dispute concern interpretation of federal regulations and the status of two complete fraud recovery programs. The dispute is not limited to technical audit-related shortcomings.

A comparison of the facts of this case with the facts in this Circuit's reported decisions bolsters our conclusion. In *New Jersey III*, 670 F.2d 1300, the issue was whether a handwritten note was sufficient to certify a single nursing home for reimbursement. The case involved costs incurred for a limited time in one nursing home, and the issue had no broader implications for other nursing homes. The Circuit Court found this to be an archetypical disallowance dispute. Similarly, in *Delaware*, 665 F.Supp. 1104, the District Court held that a dispute arising from a routine audit over reimbursement of costs for two nursing homes for a limited period of time was a disallowance dispute. The audit revealed that the state agency had failed to review a total of *four patients* in those two nursing homes.

The dispute presented in Count II is far removed from the disallowance disputes described in *New Jersey III* and *Delaware*. At issue is the status of two entire fraud recovery programs, not the propriety of individual collections under those programs. In this sense, the facts of the instant case are most closely akin to the cost-sharing program for welfare fraud prosecutions, found to be a compliance dispute in *Commonwealth v. Heckler*, 730 F.2d 923. For the reasons stated above, we conclude that Count II presents a compliance dispute as defined in this Circuit.

But plaintiff also argues that the *New Jersey* trilogy and its progeny have been rejected by the Supreme Court in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). There the Supreme Court held that the District Court had jurisdiction over a reimbursement dispute that under the New Jersey trilogy would likely be classified as a compliance dispute. Thus, plaintiff argues, the Third Circuit Court's view of the compliance/disallowance dichotomy is discredited, if not flatly overruled.

Closer examination of *Bowen v. Massachusetts* shows that the Opinion does not have the broad scope plaintiff claims for it. Indeed the compliance/disallowance dichotomy at issue in the present case, the core of the *New Jersey* trilogy, was simply not presented to the Court. At issue was whether original jurisdiction over a disallowance dispute under § 1316(d) properly lay in the District Court or the United States Court of Claims. In *Bowen v. Massachusetts*, the parties and the Court assumed that they were faced with a disallowance dispute. The matter was not contested, and the compliance/disallowance dichotomy was simply never raised. 487 U.S. at ——, n. 16, 108 S.Ct. at 2730, n. 16, 101 L.Ed.2d at 762, n. 16. We decline plaintiff's invitation to reject the *New Jersey* trilogy on this slimmest of implications. We find *Bowen v. Massachusetts* to be inapposite to the issue presented here, leaving us bound by the prior holdings of the Third Circuit Court of Appeals.

Anticipating that we might find jurisdiction to be with the United States Court of Appeals for the Third Circuit under

§ 1316(a), plaintiff has made the alternative argument that this matter should be remanded to the Secretary for the more formal and extensive administrative procedures required for compliance disputes. While we recognize that remand might be appropriate in certain circumstances, *see, New Jersey I*, 670 F.2d at 1277–1278, in the present case it would accomplish nothing more than the extraction of a pound of administrative flesh from the Secretary. An extensive administrative record has already been compiled, and the Commonwealth had full opportunity to present any information it deemed relevant. Indeed the Commonwealth does not identify any factual issue which might be resolved by additional hearings or evidence. The Commonwealth does not seek to supplement the record in any way and does not claim that the record is in any manner inadequate. Nor is there any indication that further proceedings would alter the Department's decision or the issues presented. *Id.* Remand will therefore be denied.

Finally, we must decide whether to dismiss Count II for lack of jurisdiction or transfer it to the Court of Appeals pursuant to 28 U.S.C. § 1631. That provision requires that:

> Whenever ... [a] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought *at the time it was filed or noticed* ... (emphasis added)

The difficulty here lies in the last clause. Direct appeals to the Circuit under 42 U.S.C. § 1316(a) must be made within sixty (60) days of notification of the Department's final decision. The instant suit was not filed until nearly two years after the final decision of the Department's Grant Appeals Board. It thus appears that this action would have been untimely if filed with the Circuit. Transfer is therefore inappropriate under 28 U.S.C. § 1631, and Count II will be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, we will enter summary judgment in favor of defendant on Count I, and dismiss Count II for lack of subject matter jurisdiction.